# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS
MEREDITH ELIZALDE, Ind and as Administratrix of the ESTATE of NICOLAS ELIZALDE, Deceased

### DEFENDANTS
PHILADELPHIA SCHOOL DISTRICT

**(b)** County of Residence of First Listed Plaintiff   Delaware County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Thomas R. Kline, Esq. / Kline & Specter, PC,
1525 Locust Street, Phila. PA 19102   215-772-1000

Attorneys *(If Known)*
Unknown at this time

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983
Brief description of cause:
Violation of Plaintiff's Fourteenth Amendment rights resulting in his death

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $   Excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   August 27, 2024

SIGNATURE OF ATTORNEY OF RECORD   /s/ Thomas R. Kline

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MEREDITH ELIZALDE**, individually and as Administratrix of **the Estate of NICOLAS ELIZALDE**, a minor, deceased<br>219 Gerald Drive<br>Aston, PA 19014<br><br>*Plaintiff,*<br>v.<br><br>**THE SCHOOL DISTRICT OF PHILADELPHIA**<br>440 N. Broad Street<br>Philadelphia, PA 19130<br><br>*Defendant.* | **CIVIL ACTION NO:**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

1.     Plaintiff institutes this action pursuant to the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §§ 1983, 1985, 1986, and 1988 against Defendant for the relief requested below.

**PARTIES**

2.     Plaintiff, Meredith Elizalde, Individually and as Administratrix of the Estate of Nicolas Elizalde, Deceased Minor, by and through her attorneys Kline & Specter, PC, file this Complaint against Defendant, School District of Philadelphia as detailed below.

3.     Defendant The **School District of Philadelphia** ["the District"] is a local government agency existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with a place of business located at 440 North Broad Street, Philadelphia, PA 19130.

4.     At all times material hereto, the Defendant was responsible for the orderly administration and conduct of the schools with the School District of Philadelphia, responsible for

the implementation of administrative practices and procedures to be employed with the School District, as well as Security protocols, Responses and Procedures applicable to the School District of Philadelphia as well as Roxborough High School.

5.      At all times material hereto, the Defendant was a municipal government entity acting under color of state law.

## JURISDICTION AND VENUE

6.      This Complaint alleges that, in connection with their administration of Philadelphia Public Schools, the Defendant instituted policies and customs which caused the violation of Nicolas Elizalde's rights to life and liberty, in the form of the right to bodily integrity, pursuant to the Fourteenth Amendment of the United States Constitution, which is remediable under 42 U.S.C. § 1983, 1985, 1986, and 1988. Therefore, this Court exercises jurisdiction under 28 U.S.C. § 1331.

7.      The events giving rise to this litigation occurred in Philadelphia County and within the Eastern District of Pennsylvania. Therefore, venue is proper in this Court under 28 U.S.C. § 1391.

## OPERATIVE FACTS

8.       This civil action is brought on behalf of the Estate of Nicolas Elizalde, aged 14, who was killed during a shooting that occurred following a high school football scrimmage on September 27, 2022, at Roxborough High School in Philadelphia, PA.

9.      On the afternoon of September 27, 2022, an interscholastic football scrimmage between the junior varsity football teams of Roxborough High School, Northeast High School, and Boys Latin High School of Philadelphia was held at Gorgas Park, which is located approximately two blocks from Roxborough High School and leased by the school as its athletic field.

10.      The scrimmage was open to the public.

2

11.     Upon information and belief, the scrimmage attracted over 200 people to Gorgas Park and the area outside Roxborough High School.

12.     School officials did not notify the Philadelphia Police Department about the scrimmage.

13.     School officials did not provide for additional security for the event.

14.     Nicolas Elizalde was a freshman at Walter B. Saul High School, a school within the School District of Philadelphia that did not have a football team and was member of the Roxborough High School junior varsity football team who participated in the scrimmage.

15.     Because the locker rooms the team used were on school grounds, student athletes were required to walk on public roadways, sidewalks, and open portions of school grounds along the side of Roxborough High School both to and from the field.

16.     Shortly after Roxborough High School release time of 2:34 PM, the scrimmage commenced.

17.     At approximately 4:30 PM, the scrimmage ended.

18.     After the scrimmage ended, Nicolas Elizalde and a group of other student athletes and spectators began to walk from the football stadium back to Roxborough High School, unsupervised and as directed by the Defendant, when five gunmen opened fire on them.

19.     Upon information and belief, the target of the shooting was a spectator who had attended the scrimmage and left the stadium at Gorgas Park around the same time as Nicolas Elizalde and the other student athletes who were caught in the crossfire.

20.     The shooters parked their vehicle across the street from Roxborough High School several minutes prior to the end of the scrimmage and waited for the target spectator to emerge.

21.     At no time during the several minutes the shooters sat in their vehicle waiting to begin the ambush, nor after the shooting began, did the shooters encounter any security, law enforcement, or District personnel, because none were in the area.

22.     When the target approached, and with Nicolas Elizalde and his teammates walking in the same direction nearby, the shooters emerged from their vehicle and opened fire.

23.     One of the bullets struck Nicolas Elizalde in the chest, and he collapsed on the school grounds.

24.     Plaintiff Meredith Elizalde witnessed the events, ran to provide aid, and held her son Nicolas while he bled from his gunshot wound. She also accompanied him in a police car to the Hospital.

25.     Nicolas Elizalde was pronounced dead upon arrival at Albert Einstein Medical Center.

## Violent Crime in the Vicinity of Roxborough High School

26.     In the five years preceding the September 27, 2022, scrimmage at Roxborough High School, approximately 75 assaults and weapons violations were reported in the immediate vicinity.

27.     On approximately June 8, 2022, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

28.     On approximately April 18, 2022, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

29.     On approximately April 12, 2022, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

30.     On approximately March 22, 2022, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

31.     On approximately March 21, 2022, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

32.      On approximately December 16, 2021, an Arson on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

33.     On approximately December 10, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

34.     On approximately December 8, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

35.     On approximately December 3, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

36.     On approximately December 2, 2021, assaults on the 6400 block of Ridge Avenue were reported to the Philadelphia Police Department.

37.     On approximately November 15, 2021, assaults on the 6400 block of Ridge Avenue were reported to the Philadelphia Police Department.

38.     On approximately November 10, 2021, a weapons violation and assaults on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

39.     On approximately November 11, 2021, assaults on the 6400 block of Ridge Avenue were reported to the Philadelphia Police Department.

40.     On approximately November 9, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

41. On approximately November 5, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

42. On approximately November 3, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

43. On approximately October 26, 2021, assaults on the 6400 block of Ridge Avenue were reported to the Philadelphia Police Department.

44. On approximately October 25, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

45. On approximately October 14, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department

46. On approximately October 12, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

47. On approximately October 8, 2021, assaults on the 6400 block of Ridge Avenue were reported to the Philadelphia Police Department.

48. On approximately October 6, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

49. On approximately October 1, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

50. On approximately August 24, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

51. On approximately July 5, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

52.     On approximately July 2, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

53.     On approximately May 20, 2021, a rape on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

54.     On approximately April 20, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

55.     On approximately April 6, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

56.     On approximately January 5, 2021, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

57.     On approximately March 12, 2020, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

58.     On approximately March 9, 2020, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

59.     On approximately March 5, 2020, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

60.     On approximately February 26, 2020, assaults on the 6400 block of Ridge Avenue were reported to the Philadelphia Police Department.

61.     On approximately February 21, 2020, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

62.     On approximately February 13, 2020, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

63.     On approximately February 11, 2020, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

64.     On approximately February 5, 2020, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

65.     On approximately January 30, 2020, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

66.     On approximately January 16, 2020, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

67.     On approximately December 19, 2019, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

68.     On approximately November 26, 2019, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

69.     On approximately November 25, 2019, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

70.     On approximately November 21, 2019, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

71.     On approximately November 12, 2019, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

72.     On approximately November 5, 2019, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

73.     On approximately November 3, 2019, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

74.    On approximately October 31, 2019, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

75.    On approximately October 28, 2019, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

76.    On approximately October 24, 2019, a weapons violation on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

77.    On approximately October 17, 2019, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

78.    On approximately October 13, 2019, assaults on the 6400 block of Ridge Avenue were reported to the Philadelphia Police Department.

79.    On approximately October 4, 2019, assaults on the 6400 block of Ridge Avenue were reported to the Philadelphia Police Department.

80.    On approximately September 27, 2019, assaults on the 6400 block of Ridge Avenue were reported to the Philadelphia Police Department.

81.    On approximately August 28, 2019, assaults on the 6400 block of Ridge Avenue were reported to the Philadelphia Police Department.

82.    On approximately June 8, 2019, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

83.    On approximately May 23, 2019, assaults on the 6400 block of Ridge Avenue were reported to the Philadelphia Police Department.

84.    On approximately May 22, 2019, assaults on the 6400 block of Ridge Avenue were reported to the Philadelphia Police Department.

85.     On approximately March 18, 2019, assaults on the 6400 block of Ridge Avenue were reported to the Philadelphia Police Department.

86.     On approximately January 7, 2019, a weapons violation on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

87.     On approximately December 13, 2018, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

88.     On approximately December 7, 2018, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

89.     On approximately December 6, 2018, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

90.     On approximately December 5, 2018, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

91.     On approximately December 4, 2018, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

92.     On approximately November 13, 2018, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

93.     On approximately October 4, 2018, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

94.     On approximately August 18, 2018, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

95.     On approximately May 30, 2018, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

96.     On approximately April 17, 2018, a rape on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

97.     On approximately April 9, 2018, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

98.     On approximately April 3, 2018, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

99.     On approximately February 1, 2018, a weapons violation on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

100.    On approximately January 22, 2018, an assault on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

101.    On approximately January 11, 2018, assaults on the 6400 block of Ridge Avenue were reported to the Philadelphia Police Department.

102.    On approximately January 10, 2018, a weapons violation on the 6400 block of Ridge Avenue was reported to the Philadelphia Police Department.

103.    The Defendants knew or should have known of the criminal activity that occurred within close proximity of Roxborough High School prior to the incident and taken proper precautions to prevent and/or deter criminal activity and injury to students on school grounds.

104.    Despite the numerous incidents of violent and weapons-related crime committed in the area surrounding Roxborough High School, Defendants failed to establish policies to protect students like Nicolas Elizalde from harm.

## **Gun Violence at High School Athletic Events**

105.    In recent years, there has been an alarming increase in gun violence in and around high school athletic events—particularly high school football events, as these events tend to draw larger crowds than other high school athletic events. *See* David K. Li & Corky Siemaszko, Friday night lights under fire: High school football games are being blitzed by gun violence, NBC News (September 15, 2023) https://www.nbcnews.com/news/us-news/friday-night-lights-fire-high-school-football-games-are-blitzed-gun-vi-rcna103642 (quoting Karissa Niehoff, executive director of the National Federation of State High School Associations, of which PIAA is a member, as saying "It's been sad to watch…Horrific. It's definitely the worst I can remember in 35 years as a teacher, coach, leader in sports." and reporting that when her association meets with local sports administrators about boosting security at big games, football in particular, this kind of violence is the "elephant in the room.").

106.    In the five years leading up to the shooting at Roxborough High School, there were approximately 40 shootings at high school football–related events nationwide. See Riedman, David (2023). K-12 School Shooting Database. https://k12ssdb.org/all-shootings

107.    Shootings at Pennsylvania high school football events are part of this nationwide trend of increasing gun violence.

108.    On September 9, 2016, a shooting occurred outside the William Penn Senior High School football game in York, Pennsylvania. Two adult attendees were shot and injured.

109.    On September 6, 2019, a shooting occurred outside the Jeanette High School football game in Jeanette, PA. An adult attendee was killed.

110.    That same day, a shooting occurred outside a football game between Morrisville High School and St. Andrews High School in Morrisville, PA. One attendee was injured.

12

111.    On September 20, 2019, a shooting occurred at a high school football game in Philadelphia, PA between Simon Gratz High School and Imhotep Charter High School, both schools within the School District of Philadelphia. Two spectators, aged 14 and 15, were shot and injured.

112.    On August 27, 2021, a shooting occurred outside an Academy Park High School football game in Sharon Hill, Pennsylvania. A seven-year-old girl was killed.

113.    On September 17, 2021, a shooting occurred outside a high school football game in Philadelphia, PA between Central High School and West Philadelphia High, both schools within the School District of Philadelphia.

114.    On October 30, 2021, a shooting occurred outside a high school football game at Sto-Rox Junior-Senior High School in Stowe Township, PA. One person was injured.

115.    Four days before the Roxborough High School shooting, on September 23, 2022, a shooting occurred outside a high school football game in Philadelphia, PA between West Philadelphia High School and Abraham Lincoln High School, both schools within the School District of Philadelphia.

116.    The Defendant knew of the risks of gun violence at public high school athletic events and that proper precautions were necessary to prevent and/or deter criminal activity and injury to students participating in and attending these events.

117.    Despite these warnings, Defendant did not take appropriate measures to alter district policies and customs to ensure the safety of student athletes and others at high school football events like the September 27, 2022, scrimmage.

**After-school Violence in the School District of Philadelphia**

118.   The Defendants also knew of the elevated risk of gun violence at after-school activities near school grounds in the hours following release of students.

119.   Former Chief of School Safety for the School District of Philadelphia from 2019–2023, Philadelphia Chief of Police Kevin Bethel, described the School District of Philadelphia's knowledge of this risk at the time he was with the District, saying: "Data tells us the when, the where, the why and the how of where we should put our [police] men and women… If I tell you that my [School District of Philadelphia] kids live in 18 ZIP codes and most of my kids are shot two and a half hours after school, within two miles of school, then we should focus our efforts in those places." *See* Joe Brandt, Siafa Lewis, Josh Sanders, *Who is Kevin Bethel? What You Need to Know About Philadelphia's Next Police Commissioner,* CBS Philadelphia, November 22, 2023 https://www.cbsnews.com/philadelphia/news/kevin-bethel-named-philadelphia-police-commissioner-chief-cherelle-parker/

120.   The shooting at Roxborough High School took place on school grounds, approximately two hours after the school day ended.

121.   Between June 16, 2022 and September 13, 2022, newly installed Superintendent of Philadelphia Public Schools Dr. Tony B. Watlington conducted a 100-day listening tour of district students, staff, parents, and stakeholders, which was analyzed by the School District of Philadelphia's Office of Evaluation, Research, and Accountability. The District received 359 comments about "Physical Safety & Discipline." Among the key summary findings highlighted by the District were: 1) "Students, families, and staff at schools in neighborhoods where gun violence and addiction are prevalent shared their experiences of not feeling safe going to and from school;" and 2) "Understaffing was raised as a factor undermining some schools' ability to

maintain order and security." *See* School District of Philadelphia, *Results from the Listening & Learning Sessions and Survey*, https://www.philasd.org/era/listening-learning/

### Security at Roxborough High School

122.    The District was also aware of security issues specific to Roxborough High School. As part of the 2021–22 Educational Suitability Assessment (ESA), the school received a rating of "62 (Poor)." Under the "Safety and Security" component of this metric, the school scored 4 (on a scale of "1 means Great and 5 means Not So Great") under the following categories: Controlled Entrances, Signage and Wayfinding, and Ease of Supervision. *See* School District of Philadelphia, Facilities Planning Process, *Roxborough High School,* https://www.philasdfacilities.info/Map.

123.    Under Ease of Supervision, the ESA notes the following issues: "There are many hiding places in and outside the school. There is not a good line of sight supervision internally or externally. Limited video camera coverage for security." *Id.*

124.    Under "Learning Environment: Exterior Environment" component, Roxborough High School received a rating of 5 ("Not So Great") and noted "The staff does not permit students to use these areas due to security risks." *Id.*

125.    As part of the District's 2021–22 Philly School Experience Survey, 41.7% of teachers at Roxborough High School said "School/Crime Safety" represented a "A great challenge" and 37.5% said it represented "A moderate challenge." *See* School District of Philadelphia District Performance Office, Philly School Experience Survey PSES, available at https://www.philasd.org/performance/programsservices/open-data/school-information/#district_wide_surveys.

126.    According to the Pennsylvania Department of Education Safe Schools Office, during the 2021–22 school year, Roxborough High School ranked 10th statewide in weapons

incidents per 100 students, 27th statewide in overall incidents per 100 students, and 39th statewide in violent incidents per 100 students. *See* Pennsylvania Department of Education, Office of Safe Schools, LEA/School Dashboard, https://www.safeschools.pa.gov/HistoricV2/School.aspx

127.    Despite these warnings, the Defendant did not notify the Philadelphia Police Department of the September 27, 2022, scrimmage at Roxborough High School, coordinate with law enforcement, or dispatch additional security to the event, pursuant to policies and customs of the District for after-school athletics.

128.    Despite these warnings, Defendant did not take appropriate measures to alter district policies and customs to ensure the safety of student athletes and others at after-hours activities near and/or on school grounds like the September 27, 2022, scrimmage.

<u>**District Policies and Customs**</u>

129.    At all times material hereto the Defendant, The School District of Philadelphia, was responsible for the orderly administration and conduct of the schools with the School District of Philadelphia, responsible for the implementation of administrative practices and procedures to be employed within the School District, including at Roxborough High School, Saul High School, and within athletic events organized under the Philadelphia Public League.

130.    The Philadelphia Board of Education is a policymaking body of the School District of Philadelphia.

131.    The Superintendent of the School District of Philadelphia is a policymaking officer of the School District of Philadelphia.

132.    The Philadelphia Public League is an entity organized, sponsored, and overseen by the School District of Philadelphia, is subject to the policies promulgated by the Board of Education and Superintendent, and exercises policymaking authority over athletic competition

16

among students of the School District of Philadelphia delegated to the Philadelphia Public League by the Board of Education and Superintendent.

133.    The Board of Education of the School District of Philadelphia promulgated several official policies that together govern security and student safety during athletic competition, including Policy 705: Safety; 122: Extracurricular Activities; 123: Interscholastic Athletics; 805.1: Administrative Procedures for Interactions with Law Enforcement, 904: Public Attendance at School Events, 707: Use of Facilities, as well as the Administrative Procedures adopted for implementing each of these policies.

134.    These policies also include the District's Memorandum of Understanding with the Philadelphia Police Department.

135.    In addition to establishing District policies and procedures, these documents delegate authority by directing the Superintendent or their designee to establish and periodically review administrative procedures implementing these policies.

136.    Upon information and belief, the Superintendent of the School District of Philadelphia carried out these obligations directly and via designees by establishing additional administrative procedures, which represent official policies of the School District of Philadelphia.

137.    These policies carried out via delegated authority included the Roxborough High School "School Safety Plan."

138.    These District policies, as well as others known to the Defendant but not the Plaintiffs, together provided for the organization of large-scale athletic events, including multi-school scrimmages, that were open to the public but lacked adequate security personnel and other procedures necessary to prevent the known and foreseeable risk of gun violence at public high school sporting events.

17

139.    Despite known risks of gun violence at after-school athletic events, these policies were promulgated without procedures for ensuring adequate security at these events.

140.    For instance, the Administrative Procedures for Use of School Facilities, attached to Policy 707 provides for the requirement of the presence of school safety officers at events of 50 or more people hosted by outside organizations renting school facilities, but contains no such provision for "Internal Customers" such as school athletic teams. Nor do the Administrative Procedures provide guidelines for security or coordination with law enforcement at District-sponsored events.

141.    Among the policies and administrative procedures carried out pursuant to authority delegated by the Board of Education are the Constitution, By-laws, and Playbook of the Philadelphia Public League, which also represent official policies of the School District of Philadelphia.

142.    Among the policies and administrative procedures carried out pursuant to authority delegated by the Board of Education are the Office of School Safety's School Safety Directives, which cover a variety of topics but not procedures for ensuring safety and security at events open to the public, including athletic events.

143.    Among the policies and administrative procedures carried out pursuant to authority delegated by the Board of Education are the trainings administered to employees of the School District of Philadelphia by the District's Office of Prevention & Intervention, which cover a variety of topics, but, upon information and belief, not trainings related to the safe planning and execution of events open to the public, including athletic events.

144.    Among the policies and administrative procedures carried out pursuant to authority delegated by the Board of Education is the School District of Philadelphia Employee Handbook,

which, upon information and belief, does not include training or instruction related to the safe planning and execution of events open to the public, including athletic events.

145.   During the 2022–23 school year, the School District of Philadelphia did not include any trainings related to the safe organization or security of after-school or athletic events as part of its 2022–23 Professional Development Calendar.

146.   The School District of Philadelphia does not include any trainings related to the safe organization or security of after-school or athletic events as part of its "Professional Learning for Current Leaders" program used to train current principals and assistant principals.

147.   The School District of Philadelphia does not include any trainings related to the safe organization or security of after-school or athletic events as part of its First-Year Principals Program, Onboarding for New Assistant Principals Program, Aspiring Principals Academy, Pathways to Leadership Program, Leadership Pathways Framework, or any other training program.

148.   The School District of Philadelphia requires coaches to complete third-party trainings on concussion safety, sudden cardiac arrest safety, CPR/AED/First Aid, sportsmanship, bullying, and "heads up football," but does require training related to the safe organization or security of athletic events.

149.   The training for coaches and athletic directors required by the Philadelphia Public League and Pennsylvania Interscholastic Athletic Association does not include training on the safe organization or security of athletic events.

150.   Upon information and belief, the District did not provide any training related to the safe organization or security of after-school or athletic events to the teachers, coaches, athletic directors, principals, security personnel and other district employees responsible for organizing

athletic events, including the September 27, 2022 scrimmage.

151.    As part of its five Strategic Pillars and Initiatives, the District's Office of School Safety states that it "will use research and data to inform operations, support staff performance, and enhance the development and implementation of programs and special initiatives."

152.    A representative example of the research and data collected by the District is the Philly School Experience Survey, collected in the summer of 2022. This survey documents how "Students felt less safe in spaces without sufficient supervision and when there was chaos/disorder." It further documents how students felt unsafe after dismissal. On that topic, it states "Students noted that many of these concerns stemmed from insufficient supervision." *See* School District of Philadelphia, Understanding and Measuring Perceptions of School Climate and Safety: Insights from the Philly School Experience Survey, https://www.philasd.org/research/wp-content/uploads/sites/90/2024/01/Understanding-and-Measuring-Perceptions-of-School-Climate-and-Safety-January-2024.pdf

153.    Despite concerns regarding school safety following release from school, the District's research and data efforts omitted any study of student safety at after-school athletic events. *Id.*

154.    The School District of Philadelphia had a policy or custom of failing to adequately train and/or supervise its employees who were responsible for planning, executing, and protecting public after-school athletic events, as well as those employees, such as principals, athletic directors, and security managers, responsible for supervising the employees with such responsibilities.

155.    In light of the known threat of gun violence at large-scale athletic events open to the public and of violence in the area surrounding Roxborough High School, employee training on

topics related to the safe planning and execution of public athletics events were necessary to avoid the violation of Nicolas Elizalde's constitutional rights.

156.    The School District of Philadelphia failed to provide trainings to its employees covering the skills and practices necessary to prevent violence at its after-school public athletic events.

157.    To the extent that the School District of Philadelphia delegated its authority to train and supervise its employees with respect to athletic competition to the Philadelphia Public League or other entities, the District failed to ensure that such supervision and training was sufficient to protect the safety, life, and constitutional rights of students.

158.    Pursuant to these policies and customs, the School District of Philadelphia organized large-scale athletic events open to the public without adequate security, despite knowing of the risk of gun violence these events attract.

159.    In the absence of adequate official policies, the School District of Philadelphia fostered customs among its employees and agents of organizing unsafe athletic events without adequate supervision, security, and law enforcement involvement.

## The District's Policies and Customs Caused the Violation of Nicolas Elizalde's Constitutional Rights

160.    The scrimmage on September 27, 2022, was organized pursuant to these policies and lacked adequate security, coordination with law enforcement, and other measures necessary to prevent the foreseeable and known risk of gun violence.

161.    But for the official policies of the School District of Philadelphia, Nicolas Elizalde would not have been exposed to the known and foreseeable risk of gun violence; would not have been forced to participate in a scrimmage that was open to a public audience, including the individual who was the intended target of the shooting; would not have been forced to walk

21

unsupervised on public streets, sidewalks, and publicly exposed school property without protection and supervision; would not have been forced to play football in a setting that invited but failed to adequately prevent and/or deter gun violence; and would have been protected by security and law enforcement personnel who could have prevented, deterred, and/or intervened in the shooting that claimed Nicolas Elizalde's life.

162.    The injuries and violation of constitutional rights sustained by Nicolas Elizalde were therefore directly and proximately caused by the constitutionally inadequate official policies of the School District of Philadelphia, as well as the absence of additional official policies necessary to protect students and prevent foreseeable harm to Nicolas Elizalde.

163.    The Defendant failed to implement polices, guidelines, and/or procedures pertaining to security, criminal deterrence, and the safety of students at sporting events to protect them from third party criminals acts of violence.

164.    The Defendant created and encouraged customs, policies, and/or practices that fostered an environment for criminal activity to flourish on and around its premises putting its students, like Nicolas Elizalde at an increased risk of harm caused by third party criminal actors, which was foreseeable.

165.    This action arises under the Fourteenth Amendment to the United States Constitution and is brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988. Plaintiffs allege via this action that the Defendant School District of Philadelphia violated Nicolas Elizalde's constitutional rights to life and the liberty interest in bodily integrity under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

## COUNT I

### CIVIL RIGHTS: *MONELL* CLAIM
### *Plaintiffs v. Defendant School District of Philadelphia (The District)*

166.    The previous paragraphs are incorporated herein by reference.

167.    Defendant's conduct, pursuant to polices and customs set forth above, acting under color of state law, was recklessly, willfully, and deliberately indifferent to the health, safety, well-being and constitutional rights of Plaintiff's Decedent, Nicolas Elizalde, and was committed in conscious and deliberate disregard of the substantial and/or unjustifiable risk of causing harm to members of the public and to Plaintiffs' Decedent.

168.    Defendant's official policies identified above, governing school safety, facility usage, coordination with law enforcement, and interscholastic athletics, were promulgated by policymakers including the School Board, Superintendent, Philadelphia Public League, and District employees exercising delegated policymaking authority. These official policies caused the violation of Plaintiffs' Decedent's rights pursuant to the Fourteenth Amendments to the United States Constitution by providing for the organization of large-scale after-school athletic events open to the public without adequate security to protect against the known danger of gun violence.

169.    Defendant's conduct as set forth above, pursuant to customs of Defendant, which represent official policy in their effect, violated Plaintiffs' Decedent's Due Process rights to life and liberty, in the form of personal bodily integrity, pursuant to the Fourteenth Amendment to the United States Constitution.

170.    These customs were fostered and endorsed by the Defendant with deliberate indifference to known risks of violations of the Fourteenth Amendment rights of students such as Nicolas Elizalde. These customs include:

a)   organizing large-scale after-school athletic competitions open to the public without providing for additional security or law enforcement protection;

b)   continuing to organize large-scale public athletic events, without adopting additional safety measures in response to the shootings that took place at School District of Philadelphia high school football games on September 20, 2019, September 17, 2021, and September 23, 2022;

c)   declining to adopt emergency procedures in response to threats of gun violence that were likely to reoccur after three successive shootings at District-sponsored football games;

d)   adopting arbitrary informal standards for sufficient security at after-school athletics that ignored risks to the rights of students;

e)   declining to retain and deploy sufficient security personnel, private security contractors, and school resource officers necessary to prevent, deter, and/or disrupt acts of violence at interscholastic athletic events open to the public, despite knowing of the threat of gun violence at these events;

f)   declining to retain and deploy sufficient security personnel, private security contractors, and school resource officers necessary to prevent, deter, and/or disrupt acts of violence near schools in the hours after following the end of the school day and at after-school events, despite knowledge of a persistent elevated threat to students during this time;

g)   declining to notify the City of Philadelphia Police Department and other municipal authorities of public sporting events like the Roxborough High School scrimmage that were known to attract criminal activity and assaults;

h)   declining to address safety concerns on and around the premises of Roxborough High School, despite numerous reports of nearby violent crimes and internal reports of an unsafe environment at the school;

i)   declining to deploy district resources to studying and developing policies to address threats to student safety at after-school events including interscholastic athletic competition, despite known threats to student safety;

j)   disregarding police reports of violent crimes in and around the subject premises thereby fostering an environment conducive to continued violence and criminal activity within and around Roxborough High School, conduct certain to result in additional acts of violence on the premises;

k)   disregarding police reports of violent crimes occurring at school athletic events, thereby fostering an environment conducive to continued violence and criminal activity within and around School District of Philadelphia public athletic events, conduct certain to result in additional acts of violence; and

l)  disregarding instances of violent crimes occurring at school athletic events sponsored by the School District of Philadelphia, thereby fostering an environment conducive to continued violence and criminal activity within and around District-sponsored public athletic events, conduct certain to result in additional acts of violence.

171.   Defendant created, fostered, and promoted a custom within its organization of disregarding and deliberately failing to enforce its own policies and/or implement policies that prevented the deprivation of the constitutional rights of student athletes, such as Plaintiff's Decedent.

172.   Defendant failed to adopt policies that were obviously necessary to prevent the deprivation of students' Due Process rights to bodily integrity, with deliberate indifference to the known threat of gun violence at hundreds of inadequately secured District-sponsored athletic events. These include:

a)  failing to promulgate policies and/or procedures that would ensure the presence of and coordination with law enforcement at large-scale athletic events open to the public;

b)  deliberately failing to promulgate policies and/or procedures that would require school resource officers and school safety officers at events with an elevated risk of violence;

c)  deliberately failing to promulgate policies and/or procedures that would protect students from violent crime at student athletic events, despite having knowledge of prior violent criminal acts occurring at student athletic events;

d)  deliberately failing to promulgate policies and/or procedures relating to the inspection and assessment of the premises, despite knowing of security risks at Roxborough High School;

e)  deliberately failing to promulgate policies and/or procedures that would protect students from violent crime on and around campus during the hours following school release, despite having knowledge of an elevated risk of gun violence during that time;

f)  deliberately declining to update the existing policies of the School District of Philadelphia concerning student safety, interscholastic athletics, coordination with law enforcement, and the use of school facilities in response to an elevated threat of gun violence, including at public athletic events; and

25

g) deliberately failing to update the Roxborough High School safety plan to address known risks at the school.

173. Defendants employed a training program that was constitutionally inadequate with regards to preventing the violation of students' constitutional rights, despite an obvious need for additional training, with deliberate indifference to the known risks of gun violence at after-school athletic events. These failures include:

a) deliberately failing to train employees, representatives, and/or agents on how to safely organize large-scale public athletic events, despite knowledge that such events presented a risk of attracting violent crime;

b) deliberately failing to train employees, representatives, and/or agents on how to provide adequate security and a safe environment for students during athletic sporting events, with deliberate indifference to known risks to the rights, safety, and lives of students including Nicolas Elizalde;

c) deliberately failing to train employees, representatives, and/or agents on how to properly conduct safety checks on the premises, with deliberate indifference to known risks to the rights, safety, and lives of students including Nicolas Elizalde;

d) deliberately failing to train employees, representatives, and/or agents on how to provide security to students during sporting events, with deliberate indifference to known risks to the rights, safety, and lives of students including Nicolas Elizalde; and

e) deliberately failing to train its employees how to avoid violations of its student's constitutional rights, with deliberate indifference to known risks to the rights, safety, and lives of students including Nicolas Elizalde; and

f) deliberately failing to train employees, representatives, and/or agents on how to enforce policies that promote student safety, despite knowledge of risks to the safety and rights of students.

174. As mentioned throughout this Complaint, Defendant knew of the grave risks associated with inadequate security and lack of criminal deterrence at school athletic events resulting in harm caused by third party actors.

175. Despite being armed with this knowledge, Defendant disregarded the grave risks and did not take reasonable measures to the address them, but instead, continuously allowed unsafe

conditions, such as lack of security and/or deterrence by failing to enforce its own policies and/or implement security policies that addressed life threatening safety hazards.

176.     Defendant's actions constituted a deliberate indifference to the rights and safety of Plaintiff's Decedent, as it did not adequately train and/or supervise its own Principals, Athletic Directors, Coaches, Teachers, School Safety Officers, Executive Director or other employees/representatives so as to ensure that polices regarding the security and/or deterrence at student athletic sporting events.

177.     The Defendant was aware that inadequate training of its own Principals, Superintendent, Executive Director or other employees/representatives regarding the security against life-threatening conditions, such as third-party criminal actors would increase the risk and likelihood that students would suffer serious bodily injury or death in the event of a shooting.

178.     Defendant's conduct, policies, and customs were promulgated and executed with deliberate indifference to the rights of students including Nicolas Elizalde, despite known threats of gun violence at events like the September 27, 2022, scrimmage.

179.     Further, Defendant, through the conduct, policies, and customs described above, violated Nicolas Elizalde's constitutional rights pursuant to the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983.

180.     As a direct and proximate result of the violations of their civil rights, Plaintiff's Decedent, was caused to suffer catastrophic, debilitating injuries, and death as set forth above.

**WHEREFORE,** Plaintiff demands judgment against all Defendants, individually and/or jointly and severally, in excess of $150,000.00, exclusive of interest and costs, which sum includes all damages recoverable under 42 U.S.C. § 1983, 1985, 1986, and 1988, including damages under the Pennsylvania Survival Act of 42 Pa. C.S.A. §8302 and the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. §8301, pursuant to 42 U.S.C. § 1988(a).

Respectfully submitted,

**KLINE & SPECTER, PC**

By: _____

THOMAS R. KLINE, ESQUIRE
AARON L. DUNBAR, ESQUIRE
WYATT J. LARKIN, ESQUIRE

Date:  August 27, 2024

*Attorneys for Plaintiffs*

28