**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MEREDITH ELIZALDE, individually and as Administratrix of the Estate of NICOLAS ELIZALDE, a minor, deceased, | : : : : : | Civil Action No. 2:24-cv-4494 |
| Plaintiff, | : : | |
| v. | : : | |
| THE SCHOOL DISTRICT OF PHILADELPHIA, | : : : | |
| Defendant. | : | |

**DEFENDANT THE SCHOOL DISTRICT OF PHILADELPHIA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

**ARCHER & GREINER, P.C**.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
215-963-3300
*Attorneys for the School District of Philadelphia*

By:    Jeffrey M. Scott, Esq.
        Amy E. Pearl, Esq.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................... ii

I.   INTRODUCTION .....................................................................1

II.  STATEMENT OF FACTS ............................................................2

III. LEGAL STANDARD..................................................................4

IV. ARGUMENT ...........................................................................5

   A. The Fourteenth Amendment Does Not Impose an Affirmative Obligation on the
      School District to Protect Individuals From Private Violence............................5

   B. Plaintiff Fails To Pled Sufficient Facts To Overcome *DeShaney's* "No-Duty"
      Rule. ...............................................................................7

      1. Plaintiff Fails to Allege a Special Relationship. ..................................8

      2. Plaintiff Fails to Allege a Cause of Action Under the State-Created Danger
         Theory. ........................................................................8

   C. Plaintiff Fails to Plead a Viable *Monell* Claim. .................................18

      1. Assuming *Arguendo* that Plaintiff Pleaded The Existence Of A Constitutional
         Violation, Plaintiff Fails To Identify An Unconstitutional Custom or Policy,
         Which Deprived Nicolas of His Constitutional Rights..............................19

      2. Plaintiff Fails to Plead A Failure to Train Claim.................................23

   D. The Court Should Dismiss Plaintiff's Complaint With Prejudice Because
      Amendment Will Be Futile..........................................................25

V.  CONCLUSION.......................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................4

*Baraka v. McGreevey,*
    481 F.3d 187 (3d Cir. 2007) ....................................................................................5

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................4

*Bennett v. Philadelphia,*
    499 F.3d 281 (3d Cir. 2007) ....................................................................................6

*Board of County Commissioners of Bryan County v. Brown,*
    520 U.S. 397 (1997) ..........................................................................................19, 22

*Bright v. Westmoreland County,*
    443 F.3d 276 (3d Cir. 2006) ..........................................................................6, 9, 10

*Brown v. Commonwealth of Pennsylvania, Dep't of Health Emergency Med.*
    *Servs. Training Inst.,*
    318 F.3d 473 (3d Cir. 2003) ........................................................................6, 11, 17

*Brown v. Grabowski,*
    922 F.2d 1097 (3d Cir. 1990) ..........................................................................7, 10

*Brown v. School Dist. of Philadelphia,*
    456 Fed. App'x 88 (3d Cir. 2011) ....................................................................8, 11

*Estate of Burke v. Mahoney City,*
    40 F. Supp. 2d 274 (E.D. Pa. 1999), *aff'd sub nom,* 213 F.3d 628 (3d Cir.
    2000) ......................................................................................................................11

*Cappel v. Aston Twp. Fire Dep't,*
    693 F. Supp. 3d 467 (E.D. Pa. 2023) ....................................................................19

*City of Canton, Ohio v. Harris,*
    489 U.S. 378 (1989) ..............................................................................................24

*Colburn v. Upper Darby Twp.,*
    946 F.2d 1017 (3d Cir. 1991) ................................................................................23

*Collins v. City of Harker Heights, Texas,*
    503 U.S. 115 (1992) ..........................................................................................6, 19

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998)..................................................................................6, 17

*Curay-Cramer v. Ursuline Acad. of Wilmington Del., Inc.*,
    450 F.3d 130 (3d Cir. 2006).............................................................................5

*D.M. by Sottosanti-Mack v. Easton Area Sch. Dist.*,
    No. 17-1553, 2017 WL 6557560 (E.D. Pa. Dec. 22, 2017).....................................14

*D.R. v. Middle Bucks Area Vocational Tech. Sch.*,
    972 F.2d 1364 (3d Cir. 1992)....................................................................7, 8, 17

*Davidson v. O'Lone*,
    752 F.2d 817 (3d Cir. 1984)............................................................................22

*DeShaney v. Winnebago Cnty. Dep't of Social Servs.*,
    489 U.S. 189 (1989).............................................................................. *passim*

*Forrest v. Parry*,
    930 F.3d 93 (3d Cir. 2019).........................................................................23, 24

*Fuentes v. S. Hills Cardiology*,
    946 F.2d 196 (3d Cir. 1991).............................................................................5

*Gayemen v. Sch. Dist. of City of Allentown*,
    712 Fed. App'x 218 (3d Cir. 2017)....................................................................10

*Grazier v. Campbell*,
    328 F.3d 120 (3d Cir. 2003)............................................................................19

*Green v. Chester Upland School Dist.*,
    89 F. Supp. 3d 682 (E.D. Pa. 2015) ..................................................................12

*Gremo v. Karlin*,
    363 F. Supp. 2d 771 (E.D. Pa. 2005) .................................................................14

*Hargrove v. City of Philadelphia*,
    671 F. Supp. 3d 595 (E.D. Pa. 2023) .................................................................23

*Henderson v. City of Philadelphia*,
    No. 98-3861, 1999 WL 482305, *aff'd sub nom*, 216 F.3d 1076 (3d Cir. 2000) .....................10

*Jablonski v. Pan Am. World Airways, Inc.*,
    863 F.2d 289 (3d Cir. 1988)............................................................................25

*Jett v. Dallas Independent School District*,
    491 U.S. 701 (1989).....................................................................................20

*Johnson v. City of Philadelphia,*
  397 F. Supp. 3d 692 (E.D. Pa. 2019), *aff'd,* 975 F.3d 394 (3d Cir. 2020)................................7

*Keener v. Hribal,*
  351 F. Supp. 3d 956 (W.D. Pa. 2018) ....................................................................10

*Kneipp v. Tedder,*
  95 F.3d 1199 (3d Cir. 1996).......................................................................... *passim*

*L.R. v. Sch. Dist. of Philadelphia,*
  836 F.3d 234 (3d Cir. 2016)............................................................................14, 17

*Leidy v. Borough of Glenolden,*
  277 F. Supp. 2d 547 (E.D. Pa. 2003), *aff'd,* 117 Fed. App'x 176 (3d Cir. 2004)..................10

*Losch v. Borough of Parkesburg,*
  736 F.2d 903 (3d Cir. 1984)..............................................................................19

*Mack v. Bear Stearns Residential Mortgage Corp.,*
  755 F. Supp. 2d 651 (E.D. Pa. 2010) ....................................................................4

*Mann v. Palmerton Area Sch. Dist.,*
  33 F. Supp. 3d 530 (M.D. Pa. 2014) ...................................................................13

*Mann v. Palmerton Area Sch. District,*
  872 F.3d 165 (3d Cir. 2017)............................................................................13

*Mark v. Borough of Hatboro,*
  51 F.3d 1137 (3d Cir. 1995)............................................................................18

*McTernan v. City of York, PA,*
  564 F.3d 636 (3d Cir. 2009)............................................................................21

*Mears v. Connolly,*
  24 F.4th 880 (3d Cir. 2022) ............................................................................9

*Moeck v. Pleasant Valley Sch. Dist.,*
  983 F. Supp. 2d 516 (M.D. Pa. 2013) ..................................................................13

*Mohammed v. School District of Philadelphia,*
  196 Fed. App'x 79 (3d Cir. 2006)......................................................................16

*Monell v. Department of Social Services of City of New York,*
  436 U.S. 658 (1978) ................................................................................ *passim*

*Morrow v. Balaski,*
  719 F.3d 160 (3d Cir. 2013)...................................................................... *passim*

*Morse v. Lower Merion Sch. District.*,
    132 F.3d 902 (3d Cir. 1997) ....................................................................... *passim*

*Nicini v. Morra*,
    212 F.3d 798 (3d Cir. 2000) ................................................................................5

*Papasan v. Allain*,
    478 U.S. 265 (1986) ...........................................................................................5

*Paul v. Davis*,
    424 U.S. 693 (1976) ...........................................................................................6

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ..........................................................................9, 14

*Roberson v. City of Philadelphia*,
    No. 99-3574, 2001 WL 210294 (E.D. Pa. Mar. 1, 2001) .....................................10

*Estate of Roman v. City of Newark*,
    914 F.3d 789 (3d Cir. 2019) ..............................................................................22

*Sanford v. Stiles*,
    456 F.3d 298 (3d Cir. 2006) ..............................................................................17

*Schieber v. City of Philadelphia*,
    320 F.3d 409 (3d Cir. 2003) ..............................................................................17

*Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*,
    113 F.3d 405 (3d Cir. 1997) ................................................................................5

*Sciotto v. Marple Newtown Sch. Dist.*,
    81 F. Supp. 2d 559 (E.D. Pa. 1999) ...................................................................13

*Simmons v. City of Philadelphia*,
    947 F.2d 1042 (3d Cir. 1991), *cert. denied,* 112 S. Ct. 1671 (1992) .....................20

*Thomas v. Cumberland Cnty.*,
    749 F.3d 217 (3d Cir. 2014) ..............................................................................19

*Victaulic Co. v. Tieman*,
    499 F.3d 227 (3d Cir. 2007) ................................................................................5

*Viruet v. Cuevas*,
    No. 06-1700, 2006 WL 8460240 (E.D. Pa. Aug. 28, 2006) ................................16

*Walter v. Pike Cnty., Pa.*,
    544 F.3d 182 (3d Cir. 2008) ..............................................................................10

*Williams v. Jersey Shore Area School District*,
    673 F. Supp. 3d 688 (M.D. Pa. 2023) ....................................................................9

*Wilson v. City of Phila.*,
    177 F. Supp. 3d 885 (E.D. Pa. 2016) ..................................................................19

**Federal Statutes**

42 U.S.C. § 1983 .........................................................................................................5, 6

**Rules**

F.R.C.P. 8(a)(2) .................................................................................................................4

F.R.C.P. 12(b)(6) .....................................................................................................2, 4, 5

## I.    INTRODUCTION

Plaintiff Meredith Elizalde seeks to hold Defendant, the School District of Philadelphia ("School District") liable under the United States Constitution for the acts of five young men, who murdered her son on September 27, 2022 when they missed their intended target as they fired into a group of students and spectators in the street.  Plaintiff alleges that "[a]t no time during the several minutes the shooters sat in their vehicle waiting to begin the ambush, nor after the shooting began, did [they] encounter any security, law enforcement, or District personnel, because none were in the area."[1]

Plaintiff's sole claim is premised on the proposition that the Constitution imposes a legal duty on a school district to protect citizens from unknown and random acts of gun violence that take place on a public street.  The fatal shooting of Nicolas Elizalde was an unconscionable act that should never take place on our public sidewalks or anywhere.  However, the Constitution does not provide a remedy under the facts of this case.

Plaintiff's Complaint attempts to allege a claim under the Fourteenth Amendment, but the Fourteenth Amendment does not create a legal duty upon a local school district to protect the public from private acts of violence.  While Plaintiff alleges that the School District failed to provide adequate protection and security at a football scrimmage, these alleged failures are not actionable under a state-created danger theory for the reasons explored below.

As a consequence, Plaintiff fails to establish municipal liability against the School District based on School District policies, customs, or purported failures to train.  In the absence of any constitutional violation, Plaintiff's cause of action fails under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978).

---

[1]    Dkt. No. 1 ("Compl."), ¶21.

For these reasons, and those that follow, the School District requests this Court to dismiss Plaintiff's Complaint with prejudice.

## II.    STATEMENT OF FACTS[2]

On September 27, 2022, five gunmen opened fire on a group of student athletes and spectators after a high school football scrimmage.  Compl., ¶18.  Within that crowd was the gunmen's intended target and bystander Nicolas Elizalde, who was shot and killed in the crossfire.  *Id.* ¶¶22-25.

Nicolas was a freshman at Walter B. Saul High School, but a member of the Roxborough High School junior varsity football team because his high school did not have its own football team.  *Id.* ¶14.  On the afternoon of September 27, 2022, the junior varsity football teams of Roxborough High School, Northeast High School, and Boys Latin High School of Philadelphia had an interscholastic football scrimmage that was open to the public.  *Id.* ¶¶9-10.  The scrimmage took place at Gorgas Park, which is about two blocks from Roxborough High School and leased by the school as its athletic field. *Id.* ¶9.  According to Plaintiff, "[b]ecause the locker rooms the team used were on school grounds, student athletes were required to walk on public roadways, sidewalks, and open portions of school grounds along the side of Roxborough High School both to and from the field."  *Id.* ¶15.

Plaintiff alleges, upon information and belief, that "the scrimmage attracted over 200 people to Gorgas Park and the area outside Roxborough High School."  *Id.* ¶11.  Plaintiff further alleges that the school officials *failed to notify* the Philadelphia Police Department about the scrimmage and *failed to provide* additional security for the scrimmage.  *Id.* ¶¶12-13.

---

2    The School District accepts all facts as alleged in Plaintiff's Complaint as true as required by F.R.C.P. 12(b)(6) for purposes of this Motion to Dismiss.

At some point before the scrimmage ended, five gunmen "parked their vehicle across the street from Roxborough High School and waited for the target spectator to emerge." *Id.* ¶20. Plaintiff alleges, upon information and belief, that "the target of the shooting was a spectator who had attended the scrimmage" and who left the scrimmage around the same time as Nicolas and other student athletes when the scrimmage ended. *Id.* ¶¶18-19. The gunmen emerged from their vehicle and opened fire as their target approached, with Nicolas and his teammates walking in the same direction nearby. *Id.* ¶22. One of the bullets struck Nicolas, and he was later pronounced dead upon arrival at a hospital. *Id.* ¶¶23, 25.

Plaintiff alleges that at no point "during the several minutes that the shooters sat in their vehicles waiting to begin the ambush, nor after the shooting began, did the shooters encounter any security, law enforcement, or District personnel, because none were in the area." *Id.* ¶21.

The crux of Plaintiff's Complaint is that the School District "knew or should have known" of criminal activity[3] occurring close to Roxborough High School and "the risks of gun violence at public high school athletic events"[4] and "failed to establish policies to protect students like Nicolas Elizalde from harm." *E.g. id.* ¶¶103-04, 116-18, 167-80. Plaintiff alleges that the School District "was also aware of security issues specific to Roxborough High School." *Id.* ¶¶122-26. Plaintiff avers that despite this, the School District *failed to notify* the Philadelphia

---

3  Plaintiff's Complaint cites to "approximately 75" reports of various crimes on the 6400 block of Ridge Avenue over nearly five years. Five of these incidents allegedly involved a weapon. *See id.* ¶¶26-101.

4  Plaintiff alleges that in the five years prior to the instant shooting, approximately 40 shootings occurred at high school football-related events across the county, and that "[s]hootings at Pennsylvania high school football events are part of this nationwide trend of increasing gun violence." *Id.* ¶¶106-07.

Police Department about the scrimmage, *failed to coordinate* with law enforcement, and *failed to dispatch* additional security pursuant to policies and customs for after-school activities.[5]

Plaintiff's sole count against the School District is a *Monell* claim premised on the notion that certain School District customs, policies, and/or failures to train deprived Nicolas of his constitutional rights pursuant to the Fourteenth Amendment of the United States Constitution. *Id.* ¶¶166-80.

## III.  LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party, in responding to a pleading, may file a motion to raise the defense of "failure to state a claim upon which relief can be granted."  Specifically,

> [u]nder Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' . . . [T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal citations omitted).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Mack v. Bear Stearns Residential Mortgage Corp.*, 755 F. Supp. 2d 651, 655 (E.D. Pa. 2010) (quoting *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)).

---

[5]  Plaintiff's Complaint is somewhat inconsistent in its references to School District policies. In some places, the Complaint alleges that the School District failed to establish policies to protect its students. *E.g. id.* ¶¶104, 163.  In others, the Complaint alleges that the School District's policies were inadequate and the School District failed to alter them. *E.g. id.* ¶¶117, 160.

In considering a Rule 12(b)(6) motion, the court "must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them." *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (citing *Fuentes v. S. Hills Cardiology*, 946 F.2d 196, 201 (3d Cir. 1991)).  While accepting "as true all well-pled allegations, [a court] need not credit the non-movant's conclusions of law or unreasonable factual inferences." *Curay-Cramer v. Ursuline Acad. of Wilmington Del., Inc.*, 450 F.3d 130, 133 (3d Cir. 2006) (internal citations omitted).  Nor is the court "compelled to accept . . . 'a legal conclusion couched as a factual allegation.'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), *cert. denied*, 128 S. Ct. 612 (2007).  In light of this governing standard, Plaintiff's claim against the School District should be dismissed because the Complaint fails to state a claim under Section 1983.[6]

## IV.    ARGUMENT

### A.    The Fourteenth Amendment Does Not Impose an Affirmative Obligation on the School District to Protect Individuals From Private Violence.

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)).  The first step in evaluating a Section 1983 claim is to "identify the exact contours of the underlying right said to have been violated" and to determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998).

---

6    Plaintiff's Complaint also mentions claims under Sections 1985 and 1986. Compl., ¶1. Plaintiff has informed the Court that she will not be pursuing claims under those statutes. Dkt. No. 13, at 2. The court should thus dismiss these claims from this case.

The Supreme Court has long held that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 197 (1989).  The Fourteenth Amendment "forbids the state *itself* from depriving 'individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Morrow v. Balaski*, 719 F.3d 160, 166 (3d Cir. 2013) (quoting *DeShaney*, 489 U.S. at 195).  Rather, "the [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 126 (1992) (citing *DeShaney*, 489 U.S. at 195).

"The Supreme Court has repeatedly stated that 'the Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation.'" *Brown v. Commonwealth of Pennsylvania, Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 477-78 (3d Cir. 2003) (quoting *DeShaney*, 489 U.S. at 202); *see also Lewis*, 523 U.S. at 848 (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976) "Fourteenth Amendment is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the States.")).

The Third Circuit "has consistently adhered to the Supreme Court's teachings in *DeShaney* that 'failures to act' cannot form the basis of a valid § 1983 claim." *Bennett v. Philadelphia*, 499 F.3d 281, 287-88 (3d Cir. 2007) (citing *Bright v. Westmoreland County*, 443 F.3d 276, 283-84 (3d Cir. 2006)); *Morse v. Lower Merion Sch. District.*, 132 F.3d 902, 907-08 (3d Cir. 1997) (Failure to prevent mentally disturbed individual from entering school and attacking teacher); *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1376 (3d

6

Cir. 1992) (Failure of school officials to investigate and stop instances of sexual abuse of students); *Brown v. Grabowski*, 922 F.2d 1097 (3d Cir. 1990) (Failure to file criminal charges against an individual who repeatedly threatened and assaulted former girlfriend, despite reports to the police by the victim and her family). Applying these long-established guidelines, Plaintiff's Complaint should be dismissed because it fails to state a cognizable claim under the Fourteenth Amendment.

Distilled to its essence, Plaintiff's Complaint contends that the School District failed to predict, detect, and prevent crime by third parties, on a public street, following an interscholastic football scrimmage and the failure to do so caused the death of Nicolas, who was an innocent bystander. Plaintiff's attempt to impose a constitutional duty on the School District to protect an individual against private violence falls squarely within the prohibition of *DeShaney*. The School District does not have a Constitutional duty to prevent private violence. Therefore, Plaintiff cannot state a claim unless one of the two narrow exceptions to *DeShaney* applies.

### B.    Plaintiff Fails To Pled Sufficient Facts To Overcome *DeShaney's* "No-Duty" Rule.

The *DeShaney* Court created two exceptions to the "no-duty" rule: (1) the special relationship exception and (2) the state-created danger exception. *Johnson v. City of Philadelphia*, 397 F. Supp. 3d 692, 701 (E.D. Pa. 2019), *aff'd,* 975 F.3d 394 (3d Cir. 2020). Neither exception applies here. Plaintiff does not allege a special relationship between Nicolas and the School District. Plaintiff also fails to plead sufficient facts that give rise to a plausible state-created danger claim. For these reasons, and those that follow, Plaintiff's Complaint should be dismissed.

1.    **Plaintiff Fails to Allege a Special Relationship.**

The first exception to *DeShaney* provides that a state actor may be liable when it takes control of an individual and enters into a "special relationship" with that individual. *Morrow*, 719 F.3d at 167. The Third Circuit has consistently held that the "special relationship" exception does not apply between a public school and a student. *See*, *e.g.*, *id.* at 170-71 ("In addition, every other Circuit Court of Appeals that has considered this issue in a precedential opinion has rejected the argument that a special relationship generally exists between public schools and their students."); *Brown v. School Dist. of Philadelphia*, 456 Fed. App'x 88, 90 n.5 (3d Cir. 2011) ("There is also an exception for a person with whom the state has a custodial relationship, but a student in school does not have that relationship with the state.").

Here, Plaintiff does not and cannot allege any type of "special relationship" between Nicolas and the School District. As a result, this exception to *DeShaney* does not apply.

2.    **Plaintiff Fails to Allege a Cause of Action Under the State-Created Danger Theory.**

The second exception to *DeShaney* provides that a state actor may be liable under the "state-created danger" theory "where the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Morrow*, 719 F.3d at 177 (citing *Kneipp*, 95 F.3d at 1205). This theory rests upon "the states' *affirmative acts* which work to the plaintiffs' detriment in terms of exposure to danger." *D.R.*, 972 F.2d at 1374 (emphasis added). A plaintiff must establish four elements to maintain a cause of action under this theory:

> 1) the harm ultimately caused was foreseeable and fairly direct;
>
> 2) a state actor acted with a degree of culpability that shocks the conscience;

> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Morrow*, 719 F.3d at 177 (quoting *Bright*, 443 F.3d at 281). As will be detailed below, Plaintiff's Complaint fails to meet any of the above elements, and therefore her claim fails as a matter of law.

> a)    **The School District Did Not Affirmatively Use Its Authority to Render Nicolas More Vulnerable to Danger Than Had It Not Acted At All.**

Plaintiff's Due Process claim is based on the School District's failure to provide adequate security at an after-school football scrimmage in the face of the known *general* danger of gun violence. Plaintiff's Complaint is a direct attempt "'to redefine clearly passive inaction as affirmative acts' in a manner that is not permitted in the Third Circuit." *Williams v. Jersey Shore Area School District*, 673 F. Supp. 3d 688, 706 (M.D. Pa. 2023) (dismissing due process claim at motion to dismiss stage); *Mears v. Connolly*, 24 F.4th 880, 884 (3d Cir. 2022) ("[A]n affirmative act must amount to a 'restraint of personal liberty' that is 'similar' to incarceration or institutionalization.'").

The Third Circuit has "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was *affirmatively exercised*." *Bright*, 443 F.3d at 282-83 (emphasis added). A failure to act is therefore not actionable under a state-created danger theory. *Id.* at 283 n.6 ("In our view, 'state actors' cannot 'use their authority' to create such an opportunity by failing to act."); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d

224, 236 (3d Cir. 2008) ("Our jurisprudence requires that Phillips allege an affirmative action, rather than inaction or omission.").

"The requirement of an actual affirmative act is not intended to turn on semantics of act and omission." *Morrow*, 719 F.3d at 179. Rather, the purpose of the fourth element is "to distinguish cases where state *officials might have done more*, from cases where officials created or increased the risk itself." *Keener v. Hribal*, 351 F. Supp. 3d 956, 974 (W.D. Pa. 2018) (emphasis added) (citing *Morrow*, 719 F.3d at 179); *see also Kneipp*, 95 F.3d at 1210 ("By separating a visibly intoxicated Samantha Kneipp from her husband, her 'source of protection' at the time, we reasoned that when they abandoned her, the police increased the danger that Mrs. Kneipp would suffer harm."). Thus, this "requirement ensures that defendants are only liable for 'misuse of state authority, rather than a failure to use it.'" *Gayemen v. Sch. Dist. of City of Allentown*, 712 Fed. App'x 218, 220 (3d Cir. 2017) (quoting *Bright*, 443 F.3d at 282).

Cases involving allegations of failing to provide police protective services and adequate security all fail to meet the affirmative act requirement. *E.g. Walter v. Pike Cnty., Pa.*, 544 F.3d 182, 195 (3d Cir. 2008) (a state-created danger claim cannot be predicated on a failure to provide police protection or more security); *Leidy v. Borough of Glenolden*, 277 F. Supp. 2d 547, 561 (E.D. Pa. 2003), *aff'd,* 117 Fed. App'x 176 (3d Cir. 2004) (rejecting argument that the failure to arrest which created the opportunity for Bennett to commit his horrible crimes constituted affirmative act); *Brown v. Grabowski*, 922 F.2d 1097 (3d Cir. 1990) (failing to institute criminal charges or advise victim to get restraining order); *Roberson v. City of Philadelphia*, No. 99-3574, 2001 WL 210294, at *1, 12 (E.D. Pa. Mar. 1, 2001) (failure to execute arrest warrant); *Henderson v. City of Philadelphia*, No. 98-3861, 1999 WL 482305, *aff'd sub nom*, 216 F.3d 1076 (3d Cir. 2000) (young man jumping out window at sight of state officials arriving to bring

10

him to asylum); *Estate of Burke v. Mahoney City*, 40 F. Supp. 2d 274 (E.D. Pa. 1999), *aff'd sub nom,* 213 F.3d 628 (3d Cir. 2000) (refusing to defuse a fracas at party).

If a police department cannot be held liable under the Due Process clause for failing to warn or provide police protection to persons known to be potential victims of crimes, then the School District cannot be held liable for failing to provide security and law enforcement on public sidewalks and streets. *E.g.* Compl. ¶21 ("At no time during the several minutes the shooters sat in their vehicle waiting to begin the ambush, nor after the shooting began, did the shooters encounter any security, law enforcement, or District personnel, because none were in the area."). Having no recourse under the law to hold the police department responsible for crime, Plaintiff instead seeks to hold the School District responsible for failing to prevent an unanticipated attack, aimed at a different target. But these allegations fail to aver, much less demonstrate, how school officials use their affirmative authority to place Nicolas in more danger.

In line with this reasoning, allegations that school officials failed to act even when armed with knowledge of the dangerous circumstances that ultimately resulted in injury to the plaintiff are insufficient under a state-created danger theory. For example, in *Morrow*, the Third Circuit held that the school's failure to expel a student who continued to physically and verbally assault other students did not give rise to a state-created danger claim, notwithstanding a no-contact order and the school's knowledge of prior incidents. 719 F.3d at 178-79. And in *Brown*, the Third Circuit found that the school's promise to provide supervision and its failure to expel or punish violent students did not constitute an affirmative act sufficient to state a state-created danger claim. 456 Fed. App'x at 90.

A school district's decision not to implement or enforce a particular policy likewise does not give rise to the type of affirmative act required to state a claim under a state-created danger

theory.  *See Green v. Chester Upland School Dist.*, 89 F. Supp. 3d 682, 692 (E.D. Pa. 2015)

(rejecting Fourteenth Amendment claim where student alleged the school district failed to protect

him from an assault by a trespasser due to the failure to implement or enforce its own security

and entry procedures); *Morrow*, 719 F.3d at 178 ("[W]e decline to hold that a school's alleged

failure to enforce a disciplinary policy is equivalent to an affirmative act under the circumstances

here.").

　　　　　Here, the Complaint provides a list of the School District's alleged failures.  The

Complaint alleges:

- Despite the numerous incidents of violent and weapons-related crime committed in the area surrounding Roxborough High School, Defendants **failed to** *establish policies to protect students like Nicolas Elizalde from harm.* Compl. ¶104 (emphasis added);

- Despite these warnings, Defendant **did not take appropriate measures** *to alter district policies and customs to ensure the safety of student athletes and others at high school football events like the September 27, 2022, scrimmage.* Compl. ¶117 (emphasis added);

- Despite these warnings, the Defendant **did not notify** the Philadelphia Police Department of the September 27, 2022, scrimmage at Roxborough High School, coordinate with law enforcement, or dispatch additional security to the event, pursuant to policies and customs of the District for after-school athletics. Compl. ¶127 (emphasis added);

- *In the **absence of adequate official policies**, the School District of Philadelphia fostered customs among its employees and agents of organizing unsafe athletic events without adequate supervision, security, and law enforcement involvement.* Compl. ¶159 (emphasis added);

- The Defendant **failed to implement polic[i]es, guidelines, and/or procedures** *pertaining to security, criminal deterrence, and the safety of students at sporting events to protect them from third party criminals acts of violence.* Compl. ¶162 (emphasis added).

　　　　　These alleged failures fall well short of the type of affirmative act required to plead a

viable state-created danger theory.  Plaintiff's Complaint itself alleges that the status quo – a

public street – was already an alleged dangerous condition. *Eg.* Compl. ¶¶26-102 (listing "Violent Crime in the Vicinity of Roxborough High School").  Any lack of security on public sidewalks and roadways to and from the high school and the field did not create or increase the already existing risk of danger.

The circumstances alleged in Plaintiff's Complaint stand in stark contrast to cases where a state actor affirmatively used his authority to make a person more vulnerable to danger, had he not acted at all.  For example, in *Kneipp*, Officer Tedder separated Samantha Kneipp from her husband, and allowed Samantha, who was highly and visibly intoxicated, to be exposed to below freezing temperatures, resulting in hyperthermia and life-long debilitating injuries.  *Kneipp*, 95 F.3d at 1210; *see also Sciotto v. Marple Newtown Sch. Dist.*, 81 F. Supp. 2d 559, 565 (E.D. Pa. 1999) (school officials increased the risk of harm to the plaintiff, a student wrestler, by encouraging and compelling wrestlers of a heavier weight class to wrestle lighter, younger high school wrestlers); *Moeck v. Pleasant Valley Sch. Dist.*, 983 F. Supp. 2d 516, 528 (M.D. Pa. 2013) (ruling that state-created danger theory was sufficiently pleaded where high school wrestler was injured when forced to wrestle much heavier teammate during practice); *Mann v. Palmerton Area Sch. Dist.*, 33 F. Supp. 3d 530, 539 (M.D. Pa. 2014) (requiring student football player to continue to practice after sustaining the first substantial blow, leading to a concussion, violated student's constitutional right to bodily integrity under a state-created danger theory of liability).[7]

---

[7]    On appeal, the Third Circuit held that an injured student-athlete participating in a contact sport has a constitutional right to be protected from further harm, and that a state actor violates this right when the injured student-athlete is required to be exposed to a risk of harm by continuing to practice or compete. *Mann v. Palmerton Area Sch. District,* 872 F.3d 165, 172 (3d Cir. 2017), as amended (Sept. 22, 2017).  The claims against the individual defendants, however, were dismissed on qualified immunity grounds because the student's right was not clearly established at time of injury.  The claim against the school district was also dismissed because there was no evidence of a pattern of recurring head injuries in the

Here, there was no affirmative exercise of authority that created or enhanced the danger Nicolas already faced while out on a public street.  This court should reject Plaintiff's attempts to turn alleged failures into *affirmative acts.*  Thus, Plaintiff's Complaint should be dismissed.

   **b)**  **The Harm that Befell Nicolas Was Neither Foreseeable Nor A Fairly Direct Result of the School District's Failure to Act.**

A state-created danger claim also "requires that the harm ultimately caused was a foreseeable and a fairly direct result of the state's actions."  *Morse*, 132 F.3d at 908.  "Under Third Circuit jurisprudence, a harm is foreseeable when a state actor has actual awareness, based on concrete information, of a risk of harm to an individual or class of individuals such that the actor is on notice that his or her act or failure to act significantly enhances that risk of harm." *D.M. by Sottosanti-Mack v. Easton Area Sch. Dist.,* No. 17-1553, 2017 WL 6557560, at *3 (E.D. Pa. Dec. 22, 2017) (quoting *Gremo v. Karlin*, 363 F. Supp. 2d 771, 782 (E.D. Pa. 2005)).  While the question of whether the harm is "fairly direct" is inherently fact-specific, "a distinction exists between harm that occurs to an identifiable or discrete individual . . . and harm that occurs to a 'random' individual with no connection to the harm-causing party." *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 234, 245 (3d Cir. 2016) (quoting *Phillips*, 515 F.3d at 239).

Third Circuit jurisprudence underscores these requirements.  The Third Circuit found the plaintiff could not meet this foreseeability requirement in *Morse*, where a mentally ill woman entered a school through a back door that had been left unlocked for the convenience of construction workers and killed a daycare instructor.  The individual who killed the teacher had been seen "loitering in the school and the school area" in the week prior to the murder.  There were no allegations that the killer, or any other mentally unstable individual, had entered the

---

Palmerton Area football program.  Nor was there evidence that any member of the coaching staff deliberately exposed injured players to the continuing risk of harm that playing football poses.

school building previously or that defendants had any awareness that a mentally unstable individual would enter the school building.  Under those allegations, the court held that the defendants could not have "foreseen that allowing construction workers to use an unlocked back entrance for access to the school building would result in the murderous act of a mentally unstable third party." *Id.* at 908.  The court further found that the plaintiff's claim did not satisfy the "fairly direct" requirements as "[t]he causation, if any, is too attenuated." *Id.* at 909.

Here, Plaintiff has alleged the general information available to all: various crimes have been reported on the 6400 block of Ridge Avenue over the course of the past five years, and football games (not scrimmages) have been the site of violence.  Neither of these allegations point to the required "fairly direct" relationship between these crimes and the scrimmages involving Roxborough, the unidentified spectator, Nicolas, or the Roxborough football community specifically.  Plaintiff fails to allege that any School District employee had information that a gunman would be lying in wait, on this particular street, for the purposes of targeting a specific spectator, knowing that a group would be walking on this particular sidewalk.  Nor are there any allegations that there was a connection between the shooter and Nicolas or that Nicolas was known to be in danger of this ambush.  Plaintiff only broadly alleges that the School District was aware of the elevated risk of gun violence at after-school events and that the School District was aware of security issues at Roxborough High School. Compl. ¶¶118-26.  But these general allegations of random violence are insufficient to meet the foreseeability element and therefore the Complaint should be dismissed.  *See Morse*, 132 F.3d at 909 (explaining that "the harm visited on the plaintiffs [must be] more foreseeable than the random attack.").

Even assuming this planned ambush was foreseeable, which it was not, Plaintiff fails to allege facts sufficient to plausibly show that the ultimate harm was a fairly direct result of the

School District's inactions. *Mohammed v. School District of Philadelphia*, 196 Fed. App'x 79 (3d Cir. 2006) and *Viruet v. Cuevas*, No. 06-1700, 2006 WL 8460240 (E.D. Pa. Aug. 28, 2006) (Robreno, J.) underscore this point. In *Viruet*, the plaintiff alleged that he was sodomized by another six-grader and that the defendants created a danger to him by failing to supervise and provide security despite prior incidents of sexual assaults on students. 2006 WL 8460240, at *1 n.2. In addition to finding that these failures did not constitute an affirmative act, the District Court concluded that the plaintiff failed to establish that "he was in any more danger than each and every other student." *Id.* The court found the circumstances "indistinguishable" from *Mohammed*, where a tenth-grader was punched by another student while walking in a stairwell at school, and it was known to school officials that violence at the school had increased over the years. *Id.*; *Mohammed*, 196 Fed. App'x at 80. In *Mohammed*, the Third Circuit concluded that the School District lacked knowledge that the victim "was in any more danger than each and every other student at Olney High. Indeed, he was not even the intended victim of the assault." *Id.* at 81.

This case is no different. There are no facts which connect Nicolas to the harm-causing gunmen. Rather, Nicolas was a random individual who had no connection to the shooters. Plaintiff fails to plead that Nicolas was in any more danger than the rest of the student and public he walked with that day. And like in *Mohammed*, Nicolas was not the intended target of the ambush. Moreover, Plaintiff has not alleged that the security or protection she seeks would have prevented the attack. *See id.* at 82 ("Surveillance in stairwell four may have aided in apprehending the attacker, but it is speculation to say that it would have prevented the attack. It is also speculative to assume that if the full complement of security officers reported to Olney High that day, one of them would have been assigned to monitor stairwell four.").

Consequently, the ambush was not a fairly direct result of any lack of security or protection. Plaintiff thus fails to establish this element of a state-created danger claim.

### c) Plaintiff Fails to Allege that A School District Employee Engaged in Conscience-Shocking Behavior

To demonstrate a state created-danger claim, a complaint must allege that a state actor engaged in conscience-shocking behavior under the circumstances of the case. The "substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Lewis*, 523 U.S. at 847. In particular, the degree of culpability required to meet the 'shock the conscience' standard depends upon the particular circumstances that confront those acting on the state's behalf." *Schieber v. City of Philadelphia*, 320 F.3d 409, 417 (3d Cir. 2003). In situations "where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient." *L.R.*, 836 F.3d at 235 (quoting *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006)).

Deliberate indifference requires a "conscious disregard of a substantial risk of serious harm." *Id.* "'[I]ndefensible passivity,' and 'nonfeasance' do not rise to the level of a constitutional violation." *Brown v. Commonwealth of Pennsylvania Dept. of Health Emergency Servs. Training Inst.*, 318 F.3d 473, 477 (3d Cir. 2003) (quoting *D.R.*, 972 F.2d at 1376). The Complaint, wiped clean of its conclusory language fails to allege that any School District employee acted in conscious disregard of a substantial risk of harm. Though Plaintiff alleges that the School District was "aware of security issues specific to Roxborough High School," she fails to allege instances of prior violence at Roxborough High School. At best, Plaintiff alleges nonfeasance, which is insufficient under a state-created danger theory. As in *Morse*, Nicolas was

17

"the tragic victim of random criminal conduct rather than of school officials' deliberate, callous decisions." 132 F.2d at 911-12.  Plaintiff has not met this pleading burden.

<blockquote>

**d)      There Was No Relationship Between Nicolas and the School District Such That Nicolas Was A Foreseeable Victim.**

</blockquote>

A state-created danger claim also requires "a relationship between the state and the person injured . . . during which the state places the victim in danger of a foreseeable injury." *Kneipp*, 95 F.3d at 1209.  The state-created danger exception "contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense." *Id.* at 1209 n. 22; *see also Morse*, 132 F.3d at 914 ("The ultimate test [under the third element] is one of foreseeability.").  For example, in *Kneipp*, the Third Circuit found this element met where the defendant "exercising his powers as a police officer, placed [the plaintiff] in danger of foreseeable injury when he sent her home unescorted in a visibly intoxicated state in cold weather." *Id.* at 1209.  By contrast, "[w]hen the alleged unlawful act is a policy directed at the public at large . . . the requisite relationship is absent."  *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1153 (3d Cir. 1995).  For the reasons set forth in Section IV.B.2.b, Nicolas was not a foreseeable victim and the alleged unlawful act is a policy directed at the public at large.  Thus, Plaintiff's Complaint should be dismissed.

**C.      Plaintiff Fails to Plead a Viable *Monell* Claim.**

To plead a claim for municipal liability against the School District, Plaintiff must allege that (1) a constitutionally protected right was violated and (2) the alleged constitutional violation resulted from the School District's official policy or custom. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978).  Put differently, the court must analyze two separate questions when addressing a municipal liability claim, "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the [municipality] is responsible

for that violation." *Collins*, 503 U.S. at 120.  Absent an underlying constitutional violation, there can be no municipal liability. *Grazier v. Campbell*, 328 F.3d 120 (3d Cir. 2003); *Cappel v. Aston Twp. Fire Dep't*, 693 F. Supp. 3d 467, 489 (E.D. Pa. 2023) (Because the well-pleaded allegations fail to state a plausible constitutional claim, plaintiff's municipal liability claim fails).

A successful *Monell* claim must therefore establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom. *Wilson v. City of Phila.*, 177 F. Supp. 3d 885, 908 (E.D. Pa. 2016) (citing *Monell*, 436 U.S. at 658).  The municipality is liable when either the policy or custom facially violates the Constitution, or if not unconstitutional itself, is the "moving force" behind the constitutional violation.  *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 407-08 (1997); *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014).

Here, Plaintiff's Complaint fails to allege that a School District employee violated Nicolas' constitutional rights.  Instead, Nicolas' injuries were caused solely by a private actor. Thus, no School District policy was the moving force behind any constitutional violation. Plaintiff's Complaint fails to alleged a viable substantive due process claim.  Therefore, Plaintiff's Complaint should be dismissed.

1.    **Assuming *Arguendo* that Plaintiff Pleaded The Existence Of A Constitutional Violation, Plaintiff Fails To Identify An Unconstitutional Custom or Policy, Which Deprived Nicolas of His Constitutional Rights.**

Under *Monell*, "a plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between the execution of the policy and the injury suffered."  *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).  Furthermore, "when a plaintiff alleges that a municipal custom or practice, as opposed to a municipal policy, worked a

constitutional deprivation, the plaintiff must both identify officials with ultimate policymaking authority in the area in question and adduce scienter-like evidence . . . with respect to them." *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1060-62 (3d Cir. 1991), *cert. denied,* 112 S. Ct. 1671 (1992) (discussing *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989)).

Notwithstanding Plaintiff's allegations related to various School District policies, *e.g.* Compl. ¶¶133, 134, 137, Plaintiff does not allege that the School District has a written policy that is unconstitutional on its face. Plaintiff's policy claim is premised on the *failure* to adopt policies to protect students from private violence, or amend existing policies to do so. *See id.* ¶172. As previously discussed, the Fourteenth Amendment does not guarantee safety from private acts of violence.

The Complaint is devoid of factual allegations demonstrating that the purported unconstitutional customs or practices are so wide-spread or even known to officials with official policy-making authority. Plaintiff's Complaint alleges, in pertinent part:

> 133. The Board of Education of the School District of Philadelphia promulgated several official policies that together govern security and student safety during athletic competition, including Policy 705: Safety; 122: Extracurricular Activities; Interscholastic Athletics; 805.1: Administrative Procedures for Interactions with Law Enforcement, 904: Public Attendance at School Events, 707: Use of Facilities, as well as the Administrative Procedures adopted for implementing each of these policies.

> 134. These policies also include the District's Memorandum of Understanding with the Philadelphia Police Department.

> 135. In addition to establishing District policies and procedures, these documents delegate authority by directing the Superintendent or their designee to establish and periodically review administrative procedures implementing these policies.

> 136. Upon information and belief, the Superintendent of the School District of Philadelphia carried out these obligations directly and via designees by establishing additional administrative procedures, which represent official policies of the School District of Philadelphia.

20

137. These policies carried out via delegated authority included the Roxborough High School "School Safety Plan."

138. These District policies, as well as others known to the Defendant but not the Plaintiffs, together provided for the organization of large-scale athletic events, including multi-school scrimmages, that were open to the public but lacked adequate security personnel and other procedures necessary to prevent the known and foreseeable risk of gun violence at public high school sporting events.

\*\*\*

161. But for the official policies of the School District of Philadelphia, Nicolas Elizalde would not have been exposed to the known and foreseeable risk of gun violence; would not have been forced to participate in a scrimmage that was open to a public audience, including the individual who was the intended target of the shooting; would not have been forced to walk unsupervised on public streets, sidewalks, and publicly exposed school property without protection and supervision; would not have been forced to play football in a setting that invited but failed to adequately prevent and/or deter gun violence; and would have been protected by security and law enforcement personnel who could have prevented, deterred, and/or intervened in the shooting that claimed Nicolas Elizalde's life.

Compl. ¶¶ 133-38; 161.

The allegations set forth in paragraphs 133 to 138 demonstrate that the School District *did, in fact, have security policies and protocols in place*.  None of these policies are unconstitutional on their face and go well-beyond the School District's legal duties under the Constitution. *DeShaney*, 489 U.S. at 197 (failures to provide more security and to prevent private violence, which is what is alleged here, do not by themselves give rise to a Constitutional claim). Likewise, none of the aforementioned policies required or forced Nicolas to participate in the scrimmage and be exposed to gun violence as alleged in Plaintiff's Complaint.  These policies did not force Nicolas to participate in a scrimmage that was open to the public as alleged in Plaintiff's Complaint.  And, these policies did not force the *unknown* intended target to be present at the scrimmage, or on the public sidewalk, as alleged in Plaintiff's Complaint.

When stripped of its legal conclusions, the Complaint contains no allegations that give rise to unconstitutional customs and practices. *See McTernan v. City of York, PA*, 564 F.3d 636,

658 (3d Cir. 2009) ("To satisfy the pleading standard, [Plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was.").  A policy or custom of "not doing enough," which is available only through the lens of 20/20 hindsight, does not even give rise to a negligence claim.  And even if insufficient security rises to the level of negligence, negligence is insufficient to give rise to a constitutional claim. *Davidson v. O'Lone*, 752 F.2d 817 (3d Cir. 1984).

Thus, as a matter of law, a policy or custom that fails to provide additional or better security against private acts of violence does not give rise to a *Monell* claim.  If such a claim were allowed to survive, the School District would become the guarantor of the safety of any person that attended a school event, whether it be "back to school night," theatrical productions, sporting events, or any other event that was sponsored by the School District.  Such a result would run contrary to well-established Fourteenth Amendment jurisprudence establishing that the substantive due process clause does not transform the state into the guarantor of every citizen's safety. *DeShaney*, 489 U.S. at 195 ("The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.").

Assuming this Court were to find the existence of a well-pled municipal "custom" or "policy," such policy or custom must be the "moving force" behind Nicolas' alleged constitutional deprivation and injuries.  *Brown*, 520 U.S. at 407-08.  This requires the Complaint to set forth facts that the School District knew of past, similar violations and failed to take appropriate precautions, thus leading to Nicolas' injury. *Estate of Roman v. City of Newark*, 914 F.3d 789, 796 (3d Cir. 2019).  Here, the Complaint fails to plead this critical causal link.  There are no allegations of prior instances of any School District employee affirmatively using her

22

authority to create a danger based on an alleged unconstitutional policy.  For these reason, Plaintiff's Complaint should be dismissed.

### 2.    Plaintiff Fails to Plead A Failure to Train Claim.

Plaintiff also brings a generic conclusory failure to train claim which is not linked to Nicolas' injuries.  To bring such a cause of action, a complaint must plausibly allege that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  *Hargrove v. City of Philadelphia*, 671 F. Supp. 3d 595, 606 (E.D. Pa. 2023) (citing *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019)).  In addition to these three elements, a complaint must set forth facts which demonstrate deliberate indifference on the part of the policymakers. *Id.*  A plaintiff must therefore "identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur." *Id.* at 606-07 (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)).

Plaintiff's Complaint fails to plead these elements.  The Complaint lacks allegations that the School District employees knew they would confront gun violence at Roxborough High School following a football scrimmage, prior instances of the employees mishandling this situation, or even that the "wrong choice" (which is not defined, or even alluded to under Plaintiff's theory) will frequently cause a deprivation of constitutional rights.  For the reasons already discussed, the failure to protect an individual from private violence does not violate the Constitution.

Moreover, the alleged deficiency in a training program must be closely related to the alleged constitutional injury because "[i]n virtually every instance where a person has had his or

her constitutional rights violated by a city employee, [said] plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *Forrest*, 930 F.3d at 109 (3d Cir. 2019) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989)).  Plaintiff's alleged failure to train claim is not closely related to the alleged constitutional injury.  Plaintiff's failure to train claim is based on the failure to train unnamed employees on how to provide security during sporting events. *E.g.* Compl., ¶173(a) (failing to train employees on how to safely organize large-scale public athletic events); *id.*, ¶173(b) (failing to train employees on how to provide adequate security and a safe environment for students during athletic sporting events); *id*. ¶173(c) (failing to train employees on how to conduct safety checks on the premises during supporting events); *id.* ¶173(d) (failing to train employees on how to provide security to students during sporting events).

These alleged conclusory facts do not set forth a failure to train claim for the same reasons the custom and policy claim fails.  First, as stated above, there is no Constitutional duty to predict, detect and prevent harm caused by private violence, and no underlying constitutional violation.

Second, the facts related to the shooting are not connected to the alleged deficiencies in the training program.  The shooters did not attend the scrimmage; thus, there was no failure to conduct a security or weapons check.  The shooting did not take place inside the school stadium or facility.  To the contrary, the shooting took place on a public street and not during the sporting event.  The link between the alleged constitutional violation (although in this case, there was no constitutional violation) and the alleged deficiencies in the School District's training program are not even remotely connected. *Forrest*, 930 F.3d 93 at 109.  Therefore, Plaintiff's failure to train claim should be dismissed with prejudice.

**D.    The Court Should Dismiss Plaintiff's Complaint With Prejudice Because Amendment Will Be Futile.**

The School District respectfully request that the Court dismiss Plaintiff's Complaint against it with prejudice, as any additional amendment would be futile for the reasons set forth above. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) (amendment is futile "if the amendment will not cure the deficiency in the initial complaint or if the amended complaint cannot withstand a renewed motion to dismiss."

**V.    CONCLUSION**

For the reasons set forth herein, the School District respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

ARCHER & GREINER, P.C.

By:    */s Jeffrey M. Scott*
Jeffrey M. Scott, Esq.
Amy E. Pearl, Esq.

Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
215-963-3300
*Attorneys for the School District of Philadelphia*

Dated: November 12, 2024

229654298 v1

25