## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **MEREDITH ELIZALDE,** | : | |
| *Individually and as Administratix of* | : | |
| *the Estate of NICOLAS ELIZALDE,* | : | |
| *a minor, deceased* | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | **No. 24-4494** |
| | : | |
| **v.** | : | |
| | : | |
| **THE SCHOOL DISTRICT OF** | : | |
| **PHILADELPHIA** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**Goldberg, J.**                                                              **August 26, 2025**

### MEMORANDUM OPINION

Plaintiff, Meredith Elizalde, has brought suit, individually and as Administratix of the Estate of deceased minor Nicolas Elizalde, against Defendant, the School District of Philadelphia ("School District"), for the tragic fatal shooting of fourteen-year-old Nicolas Elizalde. Plaintiff asserts a claim under 42 U.S.C. § 1983 for a violation of Nicolas's constitutional right of bodily integrity under the state-created danger doctrine. Plaintiff argues that the School District is liable because its policies and customs—providing for the organization of athletic events open to the public without adequate security, safety protocols, or training—caused Nicolas's death.

On November 12, 2024, the School District filed a Motion to Dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On January 27, 2025, Plaintiff filed a Response in Opposition and on February 25, 2025, the School District filed a Reply Brief.

1

The facts of this case involve the heartbreaking death of an innocent fourteen-year-old who was in the wrong place at the wrong time. But unfortunately, the law under the state-created danger doctrine does not justify a cause of action against the School District, even at this early stage of litigation. Consequently, and for the reasons stated below, the School District's Motion to Dismiss will be granted.

## I.    __BACKGROUND__[1]

Nicolas Elizalde was a student at Walter B. Saul High School. (Compl. ¶ 14.) That school did not have a football team, and as such Nicolas participated in a football program at Roxborough High School. (Id. ¶ 14.)

On September 27, 2022, Nicolas attended a football scrimmage held at an athletic field in Gorgas Park. (Id. ¶ 9.) That field, leased by Roxborough High School, is located approximately two blocks from Roxborough High School. (Id.) The scrimmage was open to the public. (Id. ¶ 10.) Student athletes "were required to walk on public roadways, sidewalks, and open portions of school grounds" to get from the locker rooms on school grounds to the athletic field in Gorgas Park. (Id. ¶ 15.)

After the scrimmage, at approximately 4:30 p.m., Nicolas and a group of other student athletes were walking from the athletic field back to the locker rooms at Roxborough High School when five gunmen opened fire. (Id. ¶ 17–18.) The alleged target was an attendee of the scrimmage who left the athletic field at approximately the same time as Nicolas. (Id. ¶ 19.) The shooters were

---

[1]  The following facts were taken from Plaintiff's complaint. Under Rule of Civil Procedure 12, I accept all factual allegations in the complaint as true and will construe the complaint in the light most favorable to the plaintiff.  Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

parked across the street from Roxborough High School and emerged from their vehicle when the target approached. (Id. ¶ 20.) Nicolas was struck by one of the bullets. (Id. ¶ 23.) Plaintiff, Nicolas's mother, witnessed the incident, ran over to provide aid, and accompanied Nicolas to the hospital where he was pronounced dead upon arrival. (Id. ¶ 25.)

The complaint alleges that in the five years preceding the shooting, there were approximately seventy-five assaults and weapons violations near Roxborough High School reported to police and eight shootings at high school football-related events across the state in Pennsylvania, including three in Philadelphia. (Id. ¶ 26–115.) The complaint further states that, although it was aware of the elevated risk of gun violence at public high school athletic events, the School District "did not notify the Philadelphia Police Department of the September 27, 2022, scrimmage at Roxborough High School, coordinate with law enforcement, or dispatch additional security to the event." (Id. ¶ 116, 127.) Plaintiff asserts that Nicolas was "forced to participate in a scrimmage that was open to a public audience, including the individual who was the intended target of the shooting" and was "forced to walk unsupervised on public streets, sidewalks, and publicly exposed school property without protection and supervision." (Id. ¶ 161.)

Plaintiff claims that the School District's policies that provide for the organization of large-scale athletic events open to the public did not include "procedures for ensuring adequate safety at these events." (Id. ¶ 138–39.) The complaint points to several policies and customs and alleges that collectively these policies and customs failed to provide sufficient security, safety measures, and emergency procedures to adequately address the risk of gun violence by third parties at school athletic events. (Id. ¶ 170–172.) Plaintiff also alleges that the School District failed to properly

train employees, representatives, and agents on "how to safely organize large-scale public athletic events," "how to provide adequate security and a safe environment for students during athletic sporting events," "how to properly conduct safety checks on the premises," and "how to enforce policies that promote student safety." (Id. ¶ 173.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.

## III.    DISCUSSION

### A.  Violation of a Constitutional Right – The State-Created Danger Doctrine

To establish a § 1983 claim, Plaintiff must plead sufficient facts demonstrating a violation of a constitutional right caused by a person acting under the color of state law. Kneipp v. Tedder,

95 F.3d 1199, 1205 (3d Cir. 1996). Plaintiff alleges that Nicolas's right to personal bodily integrity was violated under the Due Process Clause of the 14th Amendment by the School District's unconstitutional customs and policies, which "plac[ed] him in an environment where harm was likely to occur." (ECF No. 22 at 8.)

In DeShaney v. Winnebago County Department of Social Services, the state knew a father was abusing his son but failed to remove the son from his father's custody. 489 U.S. 189, 191 (1989). The child was subsequently beaten and permanently injured by his father. Id. In examining these facts, the United States Supreme Court held that a state does not have an affirmative obligation under the Due Process Clause to protect its citizens from harm caused by a third party. Id. The Supreme Court thus declined to find a constitutional violation even though local officials were aware of the abuse. The Court stated that the Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." Id. at 195. "If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." Id. at 196–97.

In Kneipp v. Tedder, the Third Circuit Court of Appeals recognized an exception to the general rule that state actors do not have an affirmative constitutional duty to protect citizens from third-party acts. 95 F.3d at 1199. The state may be held liable for plaintiff's harm where "the state actors involved affirmatively acted to *create* plaintiff's danger, or to render him or her more *vulnerable* to it." D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1373 (3d Cir. 1992). This exception has come to be known as the state-created danger doctrine.

There are four required elements to demonstrate a state-created danger claim:

(1) the harm ultimately caused was foreseeable and fairly direct;
(2) a state actor acted with a degree of culpability that shocks the conscience;
(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006). (quotation marks omitted). Each element must be sufficiently alleged to establish a state-created danger claim.

Accepting all factual allegations as true and construing them in a light most favorable to Plaintiff, I find that the complaint fails to allege facts sufficient to plead the first and fourth elements of a state-created danger claim.[2]

*1. Foreseeability and fairly direct*

First, the plaintiff must demonstrate that the harm caused was foreseeable and fairly direct. "[A] harm is foreseeable when a state actor has actual awareness, based on concrete information, of a risk of harm to an individual or class of individuals such that the actor is on notice that his or her act or failure to act significantly enhances that risk of harm." Gremo v. Karlin, 363 F.Supp.2d 771, 784 (E.D. Pa. 2005); see also Phillips v. County of Allegheny, 515 F.3d 224, 238 (3d Cir. 2008).

---

[2] Because Plaintiff fails to sufficiently plead the first and fourth elements, I need not address the second and third elements—which present a closer call.

In <u>Kneipp</u>, a husband and his wife were stopped by a police officer while walking home from a bar. 95 F.3d at 1201. The officer allowed the husband to return home but the wife, who was visibly intoxicated, remained behind. <u>Id.</u> at 1202. After the officer left her on the side of the road to walk home alone, the wife was found unconscious at the bottom of an embankment and was permanently impaired after suffering hypothermia. <u>Id.</u> at 1203. The Third Circuit found that the injury was foreseeable because there was testimony that the police officer knew the wife was intoxicated and a reasonable jury could conclude that an intoxicated person is more likely to fall and injure themselves when left unescorted. <u>Id.</u> at 1208.

Here, Plaintiff alleges that the School District knew that frequent criminal activity occurred near Roxborough High School prior to the incident and that there was a high risk of gun violence at public high school athletic events. (Compl. ¶ 103, 116.) Plaintiff also asserts that the School District "knew of the elevated risk of gun violence at after-school activities near school grounds in the hours following release of students," pointing to comments made by Kevin Bethel, the School District's Chief of School Safety at the time of the shooting.  (<u>Id.</u> ¶ 118–19.) Plaintiff alleges that a survey collected by the School District concluded "[s]tudents felt less safe in spaces without sufficient supervision" and "felt unsafe after dismissal." (<u>Id.</u> ¶ 152.)

Even construing these facts in the light most favorable to Plaintiff, she fails to allege that the School District was aware, based on sufficiently concrete information, that failing to provide security at the athletic scrimmage would enhance Nicolas's risk of being the victim of gun violence. Plaintiff's allegations that the School District was generally aware of the risk of gun violence near school athletic events or criminal activity in the area surrounding the school are

insufficient to establish foreseeability. Plaintiff does not allege that the School District was aware of a specific threat against Nicolas or the intended victim. Nor does Plaintiff allege that student athletes reported to the School District that they had previously encountered gun violence when walking between the locker room and athletic field. Based on the alleged facts, the School District could not have foreseen that scheduling a scrimmage without security would result in a deadly shooting by a random third party. Therefore, Plaintiff has not alleged sufficient facts to demonstrate the harm was foreseeable.

Even if Plaintiff had sufficiently alleged foreseeability, she also fails to allege that the harm was fairly direct. "Once the foreseeability element of the state-created danger test has been determined, the complaint must also allege that the attack or harm is a 'fairly direct' result of the defendant's acts." Phillips, 515 F.3d at 239. To establish that the injury was fairly direct, Plaintiff must allege facts that show the School District's actions "precipitated or served as the catalyst for the subsequent [injury]." Grau v. New Kensington Arnold Sch. Dist., 429 F. App'x 169, 172 (3d Cir. 2011). "Although this inquiry is unavoidably fact specific for each individual case, a distinction exists between harm that occurs to an identifiable or discrete individual under the circumstances and harm that occurs to a 'random' individual with no connection to the harm-causing party." Phillips, 515 F.3d at 239.

Plaintiff asserts that the School District's failure to provide security or notify the police of the scrimmage was the direct cause of Nicolas's injury because he was required to attend the scrimmage and walk on public streets between the athletic field and the locker room, which placed

him in harm's way. But "[s]tate actors are not liable every time their actions set into motion a chain of events that result in harm." Henry v. City of Erie, 728 F.3d 275, 283 (3d Cir. 2013).

Mohammed v. School District of Philadelphia, where the Third Circuit found an injury inflicted by a third-party was not fairly direct, is instructive. 196 F. App'x 79 (3d Cir. 2006). Mohammed, a high school student, was injured in a stairwell when one student attempted to attack another student in front of Mohammed and accidentally punched Mohammed. Id. at 80. The school district was aware of numerous prior violent incidents on school grounds and that there was a staffing shortage of security officers. Id. At the time of the attack, there were no surveillance cameras or security officers present in the stairwell. Id. The Third Circuit concluded that while the harm was foreseeable, it was not a fairly direct result of the school district's actions. The court noted that Mohammed was not in any more danger than other students and, in fact, was not the intended victim. Id. at 81. Moreover, the Court stated that it was too speculative to say that video surveillance or additional security officers would have prevented the attack. Id. at 82.

The facts in this case are similar to Mohammed. Nicolas was a random victim with no connection to the harm-causing party. The attackers were targeting an attendee of the scrimmage when Nicolas was randomly caught in the gunfire. Plaintiff cannot allege that the School District knew of a specific danger Nicolas faced, because he was not placed in more danger than any other pedestrian on the street that day. Furthermore, like the attack in Mohammed, is too speculative to say that the random shooting could have been prevented by hiring security or notifying police.

Similarly, in Morse v. Lower Merion School District, the injury was neither foreseeable nor fairly direct where a random person entered a school building through an unlocked door left

open for construction workers and shot and killed a teacher. 132 F.3d 902 (3d Cir. 1997). The Third Circuit held that the plaintiffs "failed to establish that the injury was a 'fair direct' result of defendant's actions, determining that the link between the defendants' action and the subsequent harm was 'too attenuated' given that 'it was not defendants' decision to allow the rear entrance to the school to remain open that precipitated or was the catalyst for the attack.'" Grau, 429 F. App'x at 172 (quoting Morse v. Lower Merion Sch. Dist., 132 F.3d at 909).

Here, the connection between the School District's actions or inaction and the subsequent harm is also too attenuated to satisfy the "fairly direct" requirement. Nicolas happened to be on a public walkway that day due to the scrimmage, but it was not the School District's scheduling of the scrimmage or the lack of security that precipitated his tragic death. Rather, the actions of the third-party attackers acted as the catalyst. Accordingly, Plaintiff has failed to sufficiently plead the first element of her state-created danger claim.

   2.  *Affirmative Use of Authority*

Under the state-created danger doctrine, "[i]t is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." Bright, 443 F.3d at 282. An affirmative action by a state actor must create a dangerous situation or leave a plaintiff more vulnerable to danger than had the state actor failed to get involved. Id. at 282–83. A state actor is not liable when they merely knew about a danger that the plaintiff faced. See DeShaney, 489 U.S. at 201; see also D.R. by L.R., 972 F.2d at 1375–76 (finding no state-created danger because the defendant's failure to report or investigate the incidents did not create or increase plaintiffs' risk of danger, even though plaintiffs were abused on school grounds and notified school officials);

10

Brown v. Grabowski, 922 F.2d 1097 (3d Cir. 1990) (finding no constitutional violation because the police officer's failure to act did not create or increase the victim's risk of danger, even though the deceased victim reported to the police officer that her boyfriend had previously held her hostage, threatened her, and sexually assaulted her).

Plaintiff frames the School District's inaction as affirmative acts, stating that the School District acted by scheduling athletic scrimmages open to the public without security and requiring students to walk along public walkways between the locker room and athletic fields.[3] Neither of these acts created or increased Nicolas's exposure to danger. In actuality, Plaintiff is alleging that it was the School District's inaction—its failure to provide security or notify police during athletic events—that placed Nicolas in danger.

Plaintiffs cannot typically hold a state actor liable for failing to act under a state-created danger theory. See Phillips, 515 F.3d at 244 ("Our jurisprudence requires that [plaintiff] allege an affirmative action, rather than inaction or omission."). A state actor may be liable for failing to prevent harm, but only when "the state puts a man in a position of danger from private persons and then fails to protect him." Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982). In doing so, the state's role is not "merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." Id. I must therefore determine whether Plaintiff's allegations that the School District failed to provide security or protection on a public walkway frequented by student athletes satisfies

---

[3] I note that Plaintiff does not allege that participation in athletic programs was mandatory, so presumably attendance at any athletic event was optional.

this element. While the line between action and inaction in state-created danger cases is not always clear, several Third Circuit cases are instructive.

In <u>Kneipp</u>, discussed <u>supra</u>, the Third Circuit found this element was met when, due to the police officer's interference, the victim was left alone in the cold to find her way home while inebriated. <u>Kneipp</u>, 95 F.3d at 1209. By allowing the husband to leave without his inebriated wife, the state actor disrupted the status quo and placed the woman in a more vulnerable position than she previously had been in. <u>Id.</u>

In <u>Grau</u>, however, the Third Circuit held that plaintiffs failed to adequately plead the fourth element of their state-created danger claim where a student died in a car accident after leaving the schools premises in the middle of the day against school policy. 429 F. App'x at 173. Plaintiffs argued that the School District's failure to enforce policies preventing students from leaving school without authorization created a dangerous situation for students. <u>Id.</u> at 172. The Third Circuit disagreed, noting that "while plaintiffs' allegations may suffice to establish an inference that defendant's actions increased the risk that students would leave school early, plaintiffs' complaint fails to give rise to a plausible inference that defendants directly placed their son in harm's way." <u>Id.</u> at 173; <u>see also</u> <u>Morse</u>, 132 F.3d at 916 (concluding that there was no direct causal connection between the School District leaving the entrance to the school unlocked and the victim being attacked and, thus, it was not the state's action or inaction that placed the victim in harm's way).

Similarly in <u>Stover v. Camp</u>, plaintiffs were struck at an intersection by a driver who had a suspended license and was driving over double the speed limit. 181 F. App'x 305, 307 (3d Cir. 2006). Plaintiffs raised a state-created danger claim, alleging that the state knew about the

12

"dangerous conditions at the intersection, but failed to take reasonable and appropriate action to prevent accidents." Id. at 307–08. The Third Circuit held that plaintiffs failed to allege the fourth element because the state's failure to make the intersection safer was not an affirmative action. Id. at 308; see also A.G. v. Chester Upland Sch. Dist., 655 F. App'x 125, 127–129 (3d Cir. 2016) (finding that the School District's decision not to issue student identification cards was not an affirmative act that created or enhanced the danger to plaintiff).

Here, the facts alleged are analogous to Grau and Stover in that Plaintiff cannot point to an affirmative act by the School District. The School District's failure to hire security, create safety protocols, or provide protection did not place Nicolas in harm's way. Gun violence in Philadelphia is a very serious and widespread issue that presented a risk of danger to Nicolas, and other pedestrians, that day. But that same risk of danger, created by the third-party shooters, existed regardless of the School District's decision to hire security or notify police. See Mohammed, 196 F. App'x at 82 (finding that a shortage of security officers on the day of the attack did not expose the victim to increased danger). And while it is certainly possible that the School District could have made the area surrounding the athletic event safer by hiring security or notifying police, the School District did not create an unsafe environment or make students more vulnerable to gun violence. Like the victim in Morse, Nicolas was "the tragic victim of random criminal conduct rather than of school officials' deliberate, callous decisions." Morse, 132 F.3d at 911 (quoting Johnson v. Dallas Indep. Sch. Dist., 38 F.3d 198, 202 (5th Cir. 1994)).

Based on the facts alleged in the complaint, even viewed in Plaintiff's favor, the School District's actions or inaction did not violate Nicolas's constitutional rights. "The most that can be

13

said of the state functionaries in this case is that they stood by and did nothing when . . . circumstances dictated a more active role for them." DeShaney, 489 U.S. at 203. Plaintiff has not alleged an affirmative action by the School District and, thus, has failed to plead the fourth element of a state-created danger claim.

Because Plaintiff has not pled sufficient facts to sustain a state-created danger claim, I am compelled to grant Defendant's Motion to Dismiss. "[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Here, I will deny the motion with prejudice because amendment would be futile. Plaintiff cannot plausibly plead additional facts that would establish that the School District's decision not to hire security for an athletic event was an affirmative act or that would demonstrate a direct causal connection between the School District's decision and the third party's deadly shooting. See A.G. v. Chester Upland Sch. Dist., 655 F. App'x at 129 (concluding dismissal with prejudice was proper because "[t]he heart of [p]laintiff's substantive due process claim—that the decision to cease issuing student ID cards placed [p]laintiff in a dangerous situation—could not be cured by additional facts.").

### B.  Monell Liability

A municipality may be held liable for its employee's violation of a citizen's constitutional rights under § 1983, although not on a respondeat superior theory of liability.  Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 690–92 (1978).  To prevail on a Monell claim, a

plaintiff must show a policy[4] or custom[5] created by a policymaker that caused the alleged constitutional violation. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583–84 (3d Cir. 2003) (citing Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997)). To establish causation, "there must be an affirmative link between the policy and the particular constitutional violation alleged." City of Okl. City v. Tuttle, 471 U.S. 808, 823 (1985). When "the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (citation omitted).

"It is possible for a municipality to be held independently liable for a substantive due process violation even in situations where none of its employees are liable." Brown v. Commonwealth of Pennsylvania, Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 482 (3d Cir. 2003). But "in order for municipal liability to exist, there must still be a violation of the plaintiff's constitutional rights." Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006). As discussed above, Plaintiff has failed to sufficiently allege facts of a constitutional violation. Without an underlying constitutional violation, there can be no municipal liability under § 1983.

---

[4] A "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

[5] "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 417 (1997)).

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff has failed to sufficiently plead a state-created danger claim or a basis of municipal liability. An appropriate Order follows.